**WINN–DIXIE STORES, Inc.,**
v.
**UNITED STATES.**
No. 68–56.

United States Court of Claims.
Dec. 4, 1957.

Edward McCarthy, Jacksonville, Fla., for plaintiff. William R. Anchors, Jacksonville, Fla., was on the briefs.

George Willi, III, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the briefs.

MADDEN, Judge.

The plaintiff sues for interest which, it claims, should have been allowed it by the Government on overpayments by it of its taxes. The principal amounts of the overpayments have been refunded to, or credited to, the plaintiff, and it has been paid or allowed interest down to a date which the Government regards as the right date. The plaintiff claims that the interest should have run on to a date some two years later. The amount of additional interest claimed is $63,149.69.

The plaintiff filed income and excess profits tax returns for the years 1942, 1943, 1944 and 1945 and paid the taxes shown by the returns to be due. When, some years later, readjustments were made by a revenue agent, it was determined that there were deficiencies in excess profits taxes for the years 1943, 1944 and 1945, and consequent overpayments of income taxes for those years. Pursuant to the statutes, interest began to run against the plaintiff on the deficiencies, and in favor of the plaintiff on the overpayments, from the dates when the taxes represented by the deficiencies should have been paid, and from the dates when the taxes represented by the overpayments were paid respectively.

In the meantime, the plaintiff had filed applications for relief from alleged excessive and discriminatory excess profits taxes under section 722 of the In-

ternal Revenue Code of 1939, 26 U.S.C.A. Excess Profits Taxes, § 722, for each of the years 1942–1945. On August 18, 1948, the plaintiff and the Commissioner of Internal Revenue reached an agreement on the section 722 applications, increasing the plaintiff's excess profits tax credit by a substantial amount for each of the four years in question. The effect of increasing the excess profits tax credit was to decrease the amount of the plaintiff's excess profits tax for each of the years, which in turn, had the effect of increasing the plaintiff's income tax for each of the years.

Before the section 722 relief was granted, there were, as we have seen, deficiencies in the plaintiff's excess profits taxes and overpayments in its income taxes, the deficiencies being larger than the overpayments. After section 722 relief, there were overpayments in the plaintiff's excess profits taxes and deficiencies in its income taxes, the overpayments greatly exceeding the deficiencies.

■ The plaintiff recognizes the teaching of United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, that section 722 relief does not erase, retroactively, deficiencies and overpayments existing before the application of section 722 relief, and the interest appurtenant to them. After the section 722 relief was granted, there was, of course, interest on the overpayments and on the deficiencies resulting from that relief. The dates for the beginning of that interest are set by sections 3771(g) and 292(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 3771(g), 292(b). The interest was to begin to run on September 16, 1945, or one year after the filing of the application for relief, whichever was later. The plaintiff's application for relief for 1942 was filed in 1943, and for the other three years on August 5, 1946.

We return to the computation of interest upon the plaintiff's deficiencies and overpayments as they were before section 722 relief was granted. As we have said, interest on these deficiencies began to run at the time when the tax represented by the deficiency should have been paid, if the return had been correct. Section 292(a) of the Internal Revenue Code of 1939 provided that the interest should run until the date the deficiency was assessed, or, in the case of the waiver described in section 272(d), to the thirtieth day after the filing of the waiver, if that day preceded the assessment of the deficiency. As to overpayments, section 3771(b) (1) provided that interest should run in favor of the taxpayer, in cases where the overpayment was credited against other taxes, "additionally assessed", from the date of the overpayment to the date of assessment of the other taxes against which it was credited.

■ In the instant case the computation before the application of section 722 relief, showed the plaintiff overpaying its income taxes, though underpaying its excess profits taxes in a greater amount. On the overpayments, the plaintiff was allowed interest on them from the dates when the 1943, 1944 and 1945 taxes were paid, to August 5, 1947, the date one year after the plaintiff's application for section 722 relief, which is the date when interest on overpayments and deficiencies resulting from section 722 relief begins to run, as provided in sections 3771(g) and 292(b). The plaintiff does not deny that interest began to run against it, on income tax deficiencies for these years, from August 5, 1947. The Government says that it does not make sense to be paying a taxpayer interest on an income tax overpayment, and charging him interest on an income tax deficiency, for the same year. The plaintiff points to the statute, section 3771(b) (1), and says that interest on its income tax overpayments, as they existed before the section 722 recomputation, ran on until the deficiencies against which they were credited were assessed which, the plaintiff says, did not occur until May 31, 1950. The plaintiff cites Virginia Electric & Power Co. v. United States, 126 F.Supp. 178, 130 Ct.Cl. 189; Ash Grove Lime & Portland Cement Co. v. United

States, 132 F.Supp. 213, 132 Ct.Cl. 7, and Spreckels Sugar Co. v. United States, 137 F.Supp. 750, 133 Ct.Cl. 764; and Rev.Rul. 55–485, 1955–32 Int.Rev.Bull. 18.

The overpayments as they were computed before the section 722 relief were never at any time credited against any deficiency. When that relief is accorded, the preexisting computation ceases to be significant, except for the purposes of computing interest under the doctrine of Koppers that the Government is entitled to the use of the money until the relief is granted. But as for the pre-relief deficiency in excess profits tax continuing to be a deficiency after the relief, and the pre-relief overpayment of income taxes continuing to be an overpayment after the relief, the answer must be that they do not. They both become nullities, replaced by the new computation resulting from the relief.

The statutes do not expressly stipulate the date on which the replacement of the old figures by the new should take place. But, as we have seen, sections 3771(g) and 292(b) provide that interest on the overpayments of excess profits taxes and interest on the resulting deficiencies in income taxes brought about by section 722 relief begin to run one year after the date of the application for relief. In the instant case, that interest began to run on August 5, 1947. The Government says that that is the appropriate date for the extinguishment of the former and pre-relief deficiencies and overpayments, and the cessation of interest on them, and we agree. We find no statutory compulsion, nor other justification, for concluding that, for the same taxable year, the plaintiff should be, for the same period of time, collecting interest on an overpayment of income tax, and paying interest on a deficiency in income tax. As we have seen, section 3771(b) (1), providing that interest on an overpayment runs in favor of the taxpayer, when his overpayment is credited against other taxes "additionally assessed" until such other taxes are assessed, does not help the plaintiff. The

pre-relief overpayment was never credited against other taxes. It simply disappeared when the section 722 relief was granted and the new computation was made.

The plaintiff cites our decisions in Ash Grove Lime Co., supra, and Spreckels Sugar Co., supra, in support of its position. In those cases the court held that the running of interest on an overpayment of income tax for one year did not stop when a carryback from a subsequent year, by reducing the excess profits tax for the prior year, created a deficiency in the income tax for the prior year. The court held that the interest in question ran on until the date of the assessment of the deficiency against which the overpayment was credited.

The cited cases involving carrybacks may be distinguished on the ground that a carryback, when made, does not extinguish the computation shown on the original return, or by subsequent adjustments. It merely adds a new figure which is to be deducted from the excess profits tax net income, which will have the effect of increasing the income tax income. As we have said, the section 722 relief, from the date when it is applied, makes the computations of the original return and subsequent pre-relief adjustments irrelevant, except for the computation of interest under the doctrine of Koppers. The suggested distinction may not satisfy a confirmed skeptic.

Our conclusion on this phase of the case is that interest, in both directions, on the pre-relief computation ceased on August 5, 1947. That is the way the Commissioner of Internal Revenue computed it; hence the plaintiff is not entitled to anything on that account.

As to the post-relief overassessments and deficiencies, interest on the deficiencies ceased, pursuant to section 292(a), on September 18, 1948, which was 30 days after the plaintiff filed the waiver provided for in section 272(d). The Commissioner of Internal Revenue stopped interest on the overassessments on that same date. That was wrong, ac-

cording to our decision in Virginia Electric & Power Co., supra, and the Commissioner's own subsequent ruling, Rev.Rul. 55–485, 1955–32 Int.Rev.Bull. 18. Pursuant to section 292(a) the interest should have run until the deficiencies against which these overpayments were credited were assessed. The Government concedes that to that extent its determination of the plaintiff's taxes was wrong.

But the parties disagree as to when the deficiencies were assessed. The plaintiff, in its original petition, claimed interest on its overpayments only to August 12, 1949, the date on which the Government tentatively credited the overpayments against deficiencies. In its amended petition, the plaintiff claims interest to May 31, 1950, the date on which the plaintiff's overpayments were "scheduled". The Government says that this additional claim is barred by the statute of limitations since the amended petition was not filed until more than six years after the May 1950 date, to which date the plaintiff claims interest. The plaintiff says that its amended petition recites no new facts and merely asserts a legal conclusion different from that asserted in its original petition, and hence relates back to the filing date of the original petition. We are inclined to agree with the plaintiff, but we do not find it necessary to decide the point.

Under section 3771(b), as we have seen, interest on overpayments runs to the date on which the deficiencies against which the overpayments are credited are assessed. The Government says these deficiencies were assessed on August 12, 1949. The plaintiff says that what happened on August 12, 1949 was only tentative and that the final, definitive assessment of the deficiencies did not occur until May 31, 1950, the date on which the overpayments were "scheduled" by the Commissioner.

The plaintiff points to certain documents dated August 12, 1949 showing assessments and "payments", apparently including payments by credit, each one bearing the legend, "Tentative Cr.". The plaintiff seems to urge that if the credits were tentative, the assessments of the deficiencies were equally tentative. The Government says this is not so and that the assessment of the deficiencies was final. It reprints other documents which seem to show that there was nothing tentative about the assessments of the deficiencies. Since the legend on the plaintiff's documents says only that the credits are tentative, we have no basis for concluding that the assessments of the deficiencies were also tentative. The proper interest date is, then, August 12, 1949.

Plaintiff is entitled to recover $12,-350.63.

It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LITTLETON, Judge, dissents.

LARAMORE, Judge, took no part in the consideration and decision of this case.