### NORTHERN NATURAL GAS COMPANY
### v.
### The UNITED STATES.
### No. 335-62.

United States Court of Claims.

Dec. 17, 1965.

---

James W. R. Brown, Omaha, Neb., attorney of record, for plaintiff. James J. Fitzgerald, Jr., F. Vinson Roach, Jack C. Osborne, and Ralph P. Blodgett, Omaha, Neb., of counsel.

Leonard S. Togman, Bowie, Md., with whom was Acting Asst. Atty. Gen. Richard M. Roberts, for defendant. F. Moxley Featherston, Lyle M. Turner, Philip R. Miller, and David D. Rosenstein, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

Plaintiff claims $62,029.30 which represents interest allegedly due on part of a sum which it remitted in response to a notice of deficiency and which defendant subsequently refunded after a Tax Court proceeding. The issue raised by plaintiff's motion for summary judgment on this claim is whether defendant properly computed interest on the refund. Defendant counterclaims for $134,154.59, alleging that the refund was improper. Alternatively, defendant asserts that its computations are correct. The issue raised by defendant's motion for summary judgment on the counterclaim is whether plaintiff made an interest-bearing overpayment or a mere deposit into a suspense account when it remitted a sum in response to a notice of deficiency.

Plaintiff is a Delaware corporation which has its principal place of business in Omaha, Nebraska. For the taxable years 1943, 1944, and 1945, plaintiff filed returns for its income and excess profits taxes.[1] On May 14, 1947, plaintiff applied for relief from its excess profits tax liabilities for 1943, 1944, and 1945 under section 722 of the Internal Revenue Code of 1939.[2] The Commissioner of Internal Revenue denied this relief and asserted excess profits tax deficiencies in a 90-day letter sent on November 20, 1951.[3] Int.Rev.Code of 1939, §§ 272, 732.

On February 15, 1952, plaintiff petitioned the Tax Court for a redetermination of the deficiencies. Consonant with

1. The returns reported the following:

| Year | Excess Profits Tax | Income Tax |
|------|-------------------|------------|
| 1943 | $321,108.01 | $2,060,947.03 |
| 1944 | 345,821.15 | 2,141,348.45 |
| 1945 | 93,356.94 | 2,127,099.09 |

2. Plaintiff computed its excess profits tax under the average base period net income method. Int.Rev.Code of 1939, §§ 710, 713. The basis of its petition for relief under section 722 was that the average base period net income understated the real earnings potential in the pre-war years and that a realistic base period net income should be "constructed." This would have the effect of increasing the base period excess profits credit and lowering the excess profits tax.

3. The Commissioner asserted the following deficiencies:

| Year | Excess Profits Tax Deficiency |
|------|------------------------------|
| 1943 | $242,073.52 |
| 1944 | 394,295.30 |
| 1945 | 426,986.77 |

Tax Court rules, plaintiff assigned error to certain of the Commissioner's deficiency calculations.[4] Plaintiff did not, however, challenge all of the Commissioner's determinations relating to the allowability of certain deductions. The petition did state that "the entire amount" of excess profits tax for each year was disputed, but this assertion related to the claim for section 722 relief and not to the conceded deficiencies. On April 25, 1952, plaintiff remitted the amount of the conceded deficiencies, plus interest, with written directions that the remittance be applied accordingly.[5] The Collector credited this item to a suspense account.

The parties settled the case by stipulation on November 28, 1961.[6] The stipulation disposed of the issues relating to the contested deficiencies and provided for a constructive average base period net income under section 722 which considerably exceeded the average base period net income previously used to compute the excess profits tax. As a result of this settlement, plaintiff became entitled to excess profits tax refunds for 1943, 1944 and 1945.[7] On January 17, 1962, plaintiff's account was adjusted in accordance with this judgment. The April 25, 1952, remittance was formally assessed thereby creating the overpayment, and the resulting refund was computed with in-

---

4. Tax Court Rule 7(c) (4) (C), (D). The rule today is substantially the same. Tax Court Rule 7(c) (4) (B), 5 P-H 1965 Fed. Tax Serv. ¶39,017.

5. In its letter dated April 23, 1952, plaintiff requested the Collector to apply the total remittance of $741,047.65 as follows:

| Year | Excess Profits Tax Deficiency | Interest to 4-25-52 | Total |
|---|---|---|---|
| 1943 | $101,736.55 | $49,511.82 | $151,248.37 |
| 1944 | 193,352.53 | 82,497.14 | 275,849.67 |
| 1945 | 229,719.17 | 84,230.44 | 313,949.61 |

◆

6. The Tax Court ordered and decided that pursuant to the stipulations there were overpayments for 1943, 1944 and 1945. Tax Court Docket No. 38979, decision entered December 6, 1961.

7. The relevant terms of the stipulation are as follows:

| | 1943 | 1944 | 1945 |
|---|---|---|---|
| Liability computed without regard to § 722 relief | $514,148.81 | $676,527.55 | $451,814.69 |
| Tax assessed & paid (original return) | 321,108.01 | 345,821.15 | 93,356.94 |
| Deficiency before § 722 relief | $193,040.80 | $330,706.40 | $358,457.75 |
| Reduction in tax attributable to § 722 relief | 142,743.91 | 195,972.49 | 257,480.93 |
| Deficiency (to be assessed) after § 722 relief | $ 50,296.89 | $134,733.91 | $100,976.82 |
| Tax paid 4-25-52 | 101,736.55 | 193,352.53 | 229,719.17 |
| Overpayment | $ 51,439.66 | $ 58,618.62 | $128,742.35 |

terest.[8] Defendant paid plaintiff a total refund of $363,957.60 on January 24, 1962. Of this total, $229,803.01 represented the amount by which the April 25, 1952 remittance exceeded the excess profits tax as adjusted by section 722 relief, and $134,154.59 represented interest.

Plaintiff claims that in the refund computations defendant understated the amount by which the April 25, 1952, remittance exceeded the excess profits tax as adjusted by section 722 relief, and that the interest component is therefore too small. Defendant claims that it erroneously paid interest and that the refund should be reduced accordingly.

## I. DEFENDANT'S COUNTER-CLAIM

Because the issues are so complex and the statutory and case law relate somewhat differently to the claim and counterclaim, it is useful to separate the issues and analyze each as though the other were not involved. We look first to the counterclaim, for unless we can reject defendant's contention that plaintiff is not entitled to any interest on the April 25, 1952 remittance, we cannot come to plaintiff's contention that it received too little interest.

Section 3771(a) of the Internal Revenue Code of 1939 provides for six percent interest on "overpayments." Subsection (b) (2) states that interest runs against the government from the date of overpayment. Defendant argues that the April 25, 1952 remittance was merely a deposit made to stop the running of interest and not a payment. The theory is that "overpayment" is a word of art and that the case law has established that there can be no overpayment unless money is remitted with a return or in response to an assessment. Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945); Rose v. United States, 256 F.2d 223 (3d Cir. 1958); United States v. Dubuque Packing Co., 233 F.2d 453 (8th Cir. 1956); Lewyt Corp. v. Commissioner, 215 F.2d 518 (2d Cir. 1954), modified on other grounds 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955); Thomas v. Mercantile Nat. Bank at Dallas, 204 F.2d 943 (5th Cir. 1953); Fox v. United States, 248 F.Supp. 1021 (W.D.Wash.1965); Murphy v. United States, 78 F.Supp. 236 (S.D.Calif.1948); Alfred Fortugno, 41 T.C. 316 (1963), aff'd, 353 F.2d 429 (3d Cir. 1965).

The Rosenman case continues to govern the "payment" area. Regrettably, as the

8. The refund was computed in the following manner:

|  | 1943 | 1944 | 1945 |
|---|---|---|---|
| Tax after § 722 relief | $371,404.90 | $480,555.06 | $194,333.76 |
| Tax paid | 422,844.56 | 539,173.68 | 323,076.11 |
| Overpayment of tax | $ 51,439.66 | $ 58,618.62 | $128,742.35 |
| Interest over- or (under-) payment | (10,617.58) | (12,175.39) | 13,794.35 |
| Total overpayment | $ 40,822.08 | $ 46,443.23 | $142,537.70 |
| Interest to 1–17–62 | 23,831.15 | 27,112.67 | 83,210.77 |
| Total | $ 64,653.23 | $ 73,555.90 | $225,748.47 |

The Commissioner computed the interest overpayment-underpayment item by adding pre-1952 interest on the overpayment to interest on the potential deficiency (see the discussion of Koppers relating to plaintiff's claim under part II, *infra*) and subtracting the interest paid on 4–25–52 (n. 5, *supra*). Thus, for 1943, pre-1952 interest on the $51,439.66 overpayment totalled $24,476.67. Interest on the potential deficiency running to 5–14–48 totalled $35,652.73. This sum of $60,129.40 interest due item exceeded the $49,511.82 allocated to interest by plaintiff in the 1952 remittance, leaving an interest underpayment of $10,617.58. In its computations, plaintiff does not add the potential deficiency interest to the amount of interest due in 1952. Thus, plaintiff shows an interest overpayment of $25,035.15 which earns interest to 1–17–62 and increases the refunds to $85,466.61 as compared with the $64,653.23 allowed by defendant.

See footnote 14, *infra*, for the proper computation.

cited cases demonstrate, it is an area characterized by too much loose talk and too little certainty. The rule of thumb has been "payment" presupposes assessment without regard to the context in which the question arises. We find that we have to tread on tiptoes through the maze of cases that purport to follow Rosenman in order to avoid a wooden application of the Rosenman rule. This is not the first time we have been asked to carve an apparent exception out of the rule of thumb. Charles Leich & Co. v. United States, 329 F.2d 649, 165 Ct.Cl. 127, rehearing denied, 333 F.2d 871, 165 Ct.Cl. 151 (1964); Moskowitz v. United States, 285 F.2d 451, 152 Ct.Cl. 412 (1961); Reading Co. v. United States, 98 F.Supp. 598, 120 Ct.Cl. 223 (1951); Hanley v. United States, 63 F.Supp. 73, 105 Ct.Cl. 638 (1945). In these cases we have distinguished Rosenman and held that there is payment where a taxpayer makes a voluntary remittance based upon a bona fide estimate of an uncontested tax liability.

▮▮▮ We found reason for a distinction from Rosenman in Justice Frankfurter's rather cryptic parenthetical phrase [9] to the effect that the Court need not consider the meaning of section 3770(c) of the Internal Revenue Code of 1939 [10]. As we said in Leich, at 329 F.2d 649, 652, 165 Ct.Cl. 127, 133:

> Congress, in enacting section 3770 (c), made use of a double negative. This subsection seems to indicate that the fact that there has been no assessment or tax return which sets forth the tax liability should not of *itself* negate "payment". There

must be other factors present which, taken in conjunction with the fact of no tax liability, have the effect of negating "payment."

The "other factors" we look for are whether the remittances are disorderly,[11] or whether the remittance is followed by a contest.[12] Where a taxpayer admits that it has some liability, but simply dumps funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability, we have no trouble holding that the remittance is not a bona fide payment and should not earn interest. Similarly, where a taxpayer remits funds and then contests the liability, we have felt that the Rosenman principle should apply. Thus in Reading Co. v. United States, supra, and Hanley v. United States, supra, we held that amounts remitted as estimates of admitted tax liabilities were "overpayments," because they were "made incident to a bona fide and orderly discharge of the taxpayers' actual or reasonably apparent duties." 98 F.Supp. 598, 600, 120 Ct.Cl. 223, 231. However, in Leich we applied our analysis of Rosenman to somewhat different facts, and held that contest precluded "overpayment."

The defendant argues that this view of section 3770(c) gives too much meaning to that section. Pointing to Alfred Fortugno, supra, and Murphy v. United States, supra, defendant says that section 3770(c) was added to the 1939 Code to declare existing law and to correct some erroneous court decisions which had taken the hard view and denied interest to taxpayers who had mistakenly remitted

---

9. 323 U.S. 658, 663, 65 S.Ct. 536.

10. Int.Rev.Code of 1939, § 3770:
"(c) *Rule where no tax liability.*—An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

11. The origin of the "disorderly remittance" test may be found in the legislative history to § 3770(c). H.Rep. No. 510, 78th Cong., 1st Sess., 48 (1943).

12. For authority supporting this view, see United States v. Miller, 315 F.2d 354 (10th Cir.), cert. denied, 375 U.S. 824, 84 S.Ct. 64, 11 L.Ed.2d 57 (1963). See also Hill v. United States, 263 F.2d 885 (3d Cir. 1959). But see Fox v. United States, unofficially reported in advance sheets, 16 Am.Fed.Tax R.2d, ¶146,812 (W.D.Wash.1965); Murphy v. United States, 78 F.Supp. 236 (S.D.Calif.1948).

too much in attempting to comply with the Code. The legislative history certainly supports this contention, as stated. H.Rep.No.510, 78th Cong., 1st Sess., 48 (1943). We differ from the other courts, however, in our view of the Rosenman parenthetical and the section 3770(c) legislative history. We recognize that section 3770(c) was part of the Current Payment of Tax Act of 1943 which added the withholding system to the Code. No doubt Congress was primarily concerned with the effect that the case law might have on the multitude of taxpayers who for the first time were required to pay taxes before their liabilities became established. The ill-conceived judicial concept that there could be no overpayment if no tax liability actually existed could have wrought havoc to those taxpayers who honestly made remittances towards non-existent tax liabilities. Congress did not limit the scope of section 3770(c) to the withholding tax, however, so we can assume that the remedy for the limited evil Congress saw must apply throughout the tax law. We think that our analysis of Rosenman is perfectly consistent with the intention of Congress and with the pronouncement in Rosenman that "overpayment" has one meaning for all purposes. 323 U.S. 658, 663, 65 S.Ct. 536.

■ Plaintiff here made its remittance in response to a 90-day letter. The remittance was accompanied by a letter requesting the defendant to apply the total towards certain parts of the asserted deficiencies. The petition in the Tax Court and subsequent stipulations make it clear that plaintiff conceded the deficiencies earmarked in its letter. The other deficiencies it contested. In addition, it petitioned for section 722 relief. Momentarily disregarding the section 722 "contest" aspect, we are of the opinion that plaintiff "paid" a tax under the Leich analysis. We are persuaded on two grounds. First, we find that plaintiff did not simply dump funds on the Commissioner. It replied to a deficiency

notice. Nor did plaintiff contest all of the Commissioner's computations. It only contested items towards which it had made no remittance. The second ground comes from the teaching about excess profits taxes in United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955). In its holding that section 722 relief abating excess profits taxes is prospective only, we understand the Court to have said that Congress intended the excess profits tax as self-assessed in the return, *and as redetermined,* to be a liability due and owing from the return date until abated. The Supreme Court reasoned that the exigencies of World War II necessitated that the government be entitled to the use of funds until the tax could be abated. 348 U.S. 254, 262, 75 S.Ct. 268.[13] Applying this theory to the present case, we conclude that the remittance was a payment of a liability due and owing upon the acceptance of the Commissioner's redetermination.

■ Looking now at the petition for section 722 relief, we think the remittance still constitutes payment. The defendant argues that the request for section 722 relief is a contest within Leich. The theory is that were plaintiff to prevail, as it in fact did here, the total excess profits tax would be lessened. Therefore, the request alone constitutes contest almost by definition. Again we look to Koppers, and understand the Court to have said that section 722 relief takes effect when the right to relief is determined and does not affect the taxpayer's obligation to pay the tax in the meantime. In other words, plaintiff here was obligated to pay the excess profits tax as self-assessed and as redetermined. When it remitted an amount to be applied against some of its deficiencies, it satisfied part of its total excess profits tax liability. It conceded *that* part of its excess profits tax liability, and did not contest it. The plea for section 722 relief was unrelated to the contest over specific

---

13. In Koppers, the government had the use of the funds without charge because under § 3771(g) no interest was allowed for overpayments relating to tax years beginning prior to 1942.

adjustments of the other deficiencies because section 722 relief by its very nature is omnibus. It goes to the determination of the tax base. It has nothing to do with specific adjustments of income and deduction items. If section 722 relief were not antithetical to the notion of contest, all unassessed remittances towards excess profits taxes subsequently challenged by section 722 relief would not be entitled to interest. In this case, defendant's approach would deprive plaintiff of interest on a remittance satisfying the asserted deficiency in its entirety. The Koppers analysis of section 722 leaves little doubt as to the special nature of that relief which, when applied to this case, precludes contest.

We conclude, therefore, that plaintiff did make an overpayment and that defendant's counterclaim must be dismissed in accordance with the principles set out in Leich and Koppers.

## II. PLAINTIFF'S CLAIM

Once over the Rosenman hurdle, we come to grips with the problem of how interest on the overpayment should be computed. Again we look to Koppers, but for this purpose we construe Koppers in the light of Winn-Dixie Stores, Inc. v. United States, 156 F.Supp. 730, 140 Ct. Cl. 481 (1957).

In the Tax Court proceedings the parties agreed upon deficiencies in excess of plaintiff's conceded deficiencies. The Tax Court adopted these redetermined deficiencies. After the section 722 relief, these deficiencies were substantially reduced, and plaintiff became entitled to refunds because the sum of the payments remitted with the returns and the 1952 payment exceeded the post-section 722 deficiencies. Examining the figures, we' note that the corrected deficiencies of the respective years 1943, 1944, and 1945 of $193,040.80, $330,706.40, and $358,-457.75 were reduced by section 722 relief

in the following amounts: 1943, $142,-743.91; 1944, $195,972.49; 1945, $257,-480.93. Under the Koppers holding, the latter amounts are "potential deficiencies" to which the government is entitled until abatement under section 722 becomes effective. In Winn-Dixie, we held that interest on such "potential deficiencies" runs from the date of the tax return to a date one year after the date on which application for section 722 relief is filed. Int.Rev.Code of 1939, § 3771(g). This approach is not inconsistent with the theory of Koppers that section 722 relief is prospective only. It is an approach justified by the inter-relationship of sections 292(a) and 3771(b) to 292(b) and 3771(g). The first two provisions give the general rule for the running of interest on deficiencies and overpayments; the latter two set out a different rule for interest on deficiencies and overpayments resulting from section 722 relief. The teaching of Winn-Dixie is that to give meaning to sections 292(b) and 3771 (g), the logical point to compute interest under the Koppers doctrine is one year after the filing of the application for relief.[14] Applying this rule to plaintiff's potential deficiencies, defendant is entitled to interest from the return date to May 14, 1948, on the above amounts. The total is $106,254.43 or $35,652.73 for 1943, $37,189.14 for 1944 and $33,412.56 for 1945.

At issue is the proper time for payment of the interest on the potential deficiencies. In computing plaintiff's refund, defendant applied $106,254.43 of the 1952 remittance to satisfy the potential deficiency interest item. This has the effect of reducing the amount which plaintiff allocated to interest. Stated differently, it reduces by $106,254.43 the overpayment which earns interest from 1952 until refunded. The interest on this amount totals $62,029.30, which is the amount of plaintiff's claim.

---

14. Section 3771(g) provides that interest starts to run on overpayments on the later of September 16, 1945 or one year after application for § 722 relief is filed.

Defendant contends that its method is required by Koppers and Winn-Dixie because the interest on the potential deficiency was a liability in 1952. We conclude that this takes Koppers one step too far. It is true that Koppers establishes that the taxpayer is responsible for the interest on the potential deficiency whether or not he prevails on his section 722 claim. In this sense, plaintiff "knew" in 1952 (even though Koppers was decided in 1955) that it would most likely be liable for some amount regardless of section 722. However, there was no "current" liability because the Commissioner was restricted from assessing any deficiency during the Tax Court proceeding (Int.Rev.Code of 1939, § 272(a) (1)), and also, because the potential deficiency is based on the "corrected" deficiency which was not determined until 1961. It would not be proper for us, on these facts, to make an *ex post facto* credit of the 1952 remittance against the potential deficiency interest item which was finalized by the Tax Court decision on December 6, 1961. Accordingly, we find that the interest on the potential deficiencies should be deducted from plaintiff's total overpayment of taxes and interest as determined in 1961,[15] rather than from the 1952 remittance.

Plaintiff is entitled to recover on its petition. Plaintiff's motion for summary judgment on the petition and counterclaim is granted, and defendant's cross-motion is denied. Judgment is entered for plaintiff, with the amount of recovery to be determined pursuant to Rule 47(c) (2), and defendant's counterclaim is dismissed.

15. The following is the proper method of computation:

|  | 1943 | 1944 | 1945 |
|---|---|---|---|
| Tax after § 722 relief .......... | $371,404.90 | $480,555.06 | $194,333.76 |
| Tax paid prior to 4–25–52 ...... | (321,108.01) | (345,821.15) | (93,356.94) |
| Actual or post § 722 deficiency .. | 50,296.89 | 134,733.91 | 100,976.82 |
| Interest on post § 722 deficiency to 4–25–52 .................. | 24,476.67 | 57,483.39 | 37,022.53 |
| Interest paid on 4–25–52 ........ | (49,511.82) | (82,497.14) | (84,230.44) |
| Overpayment of interest ........ | $(25,035.15) | $(25,013.75) | $(47,207.91) |
| Tax paid prior to and on 4–25–52 | 422,844.56 | 539,173.68 | 323,076.11 |
| Overpayment of tax ............ | $ 51,439.66 | $ 58,618.62 | $128,742.35 |
| Plus: overpayment of interest .. | 25,035.15 | 25,013.75 | 47,207.91 |
| Total overpayment ............. | $ 76,474.81 | $ 83,632.37 | $175,950.26 |
| Interest to 1–17–62 ........... | 44,644.53 | 48,822.97 | 102,716.39 |
| Total ....................... | $121,119.34 | $132,455.34 | $278,666.65 |
| Less: interest on potential deficiency ..................... | 35,652.73 | 37,189.14 | 33,412.56 |
| Refund due ................... | $ 85,466.61 | $ 95,266.20 | $245,254.09 |