**CITADEL INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 65 Civ. 1710.**

United States District Court,
S. D. New York.

June 2, 1970.

Davis, Polk & Wardwell, New York City (D. Nelson Adams, John A. Reed, New York City, of counsel), Regan, Goldfarb, Powell & Quinn, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, for the United States (Richard M. Hall, Asst. U. S. Atty., of counsel).

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff moves for summary judgment upon its first cause of action, which seeks recovery of interest on an overpayment of income tax for the year 1951. The government, agreeing there is no issue of fact and that the matter is ripe for summary judgment, cross-moves for judgment in its favor dismissing the complaint.

Plaintiff was under contract during the Korean war to manufacture various armaments, including tanks, for the United States. The contracts, of course, were subject to renegotiation. Plaintiff filed its federal income tax return for the year 1951 on a calendar year basis in accordance with its prior practice.

Based upon an audit of the 1951 return, completed in 1959, the Internal Revenue Service determined that as of March 15, 1952, the date the return and payment were due, plaintiff had understated its income and owed an additional $4,510,413.86 in taxes. However, in 1953, following price renegotiation, plaintiff had repaid to the government substantial sums of money paid by the government for tanks and other equipment in 1951, with the result that plaintiff's income for 1951 was substantially reduced and, correspondingly, its tax liability decreased. The Internal Revenue Service determined that the 1953 renegotiation payments had reduced plaintiff's 1951 income to the extent that the deficiency of $4,510,413.86 was eliminated and an overassessment of $1,094,701.46 was created. Because the renegotiation payments had been made

before the audit which disclosed the deficiency of $4,510,413.86 as of March 15, 1952, that deficiency was never assessed and is referred to as a "potential deficiency."

The renegotiation payments were made (1) on February 2, 1953, in a sum sufficient to eliminate $249,242.95 of the potential deficiency, and (2) on August 28, 1953, in a sum sufficient to eliminate the balance of the deficiency of $4,261,170.91 and to create an overassessment. Plaintiff concedes that interest accrued on the potential deficiency from the due date of the return, March 15, 1952, to the date of each renegotiation payment. By August 28, 1953, when the potential deficiency was eliminated, the interest on the deficiency ("deficiency interest") totalled $384,505.21.[1]

When in 1959[2] the Internal Revenue Service determined that there had been an overassessment for 1951 of $1,094,701.46, the government did not remit any payment to plaintiff. Instead, the entire overassessment was offset against various unpaid tax liabilities, including an assessment of $384,505.21, representing the deficiency interest. However, interest was allowed on the sum of $710,196.25, the balance (after deducting the offset of $384,505.21) from August 28, 1953, the date of the second renegotiation payment.

The plaintiff here sues to recover interest on the offset of $384,505.21 from August 28, 1953, the date the overassessment arose, to June 29, 1959, when the deficiency interest was actually assessed. The government contends that the Internal Revenue Service computation accords with the governing statutory provision, section 3771(b)(1), Internal Revenue Code of 1939.[3] That section provides:

*Interest on overpayments*

(a) *Rate.* Interest shall be allowed and paid upon any *overpayment* in respect of any internal revenue tax at the rate of 6 per centum per annum.

(b) *Period.* Such interest shall be allowed and paid as follows:

(1) *Credits.*—In the case of a credit, from the date of the overpayment to the *due date* of the amount against which the credit is taken. [emphasis in text added]

Plaintiff's basic position is that the deficiency interest was not due until June 29, 1959, when it was actually assessed and, in accord with section 3771(b)(1), that plaintiff is entitled to interest on the offsetting overpayment until that date. The government counters that the deficiency interest was due by August 28, 1953, the day the overassessment arose, and that the date of actual assessment is not controlling in determining the due date of a tax—in sum, that the debts owing and owed must be offset one against the other as of August 28, 1953, to determine the actual overpayment on which interest then began to run.

The statute defines neither "due date" nor "overpayment." Nevertheless, common sense supplies the answer to the problems in this case. "[T]he word 'overpayment' in its usual sense [means] any payment in excess of

---

1. The $384,505.21 is the sum of (a) $13,199.63, representing interest from March 15, 1952 to February 2, 1953, on $249,242.95 of the potential deficiency, and (b) $371,305.58, representing interest from March 15, 1952 to August 28, 1953 on $4,261,170.91, the remainder of the potential deficiency.

2. The Internal Revenue Service notified plaintiff of the results of its audit, sub-

ject to the approval of the Joint Committee on Internal Revenue Taxation in November, 1958. Plaintiff received the certificate of overassessment in July, 1959 and a further notice of adjustment later that year. The parties, however, agree that the deficiency interest was assessed on June 29, 1959.

3. The 1939 Code is here applicable. § 7851(a) (6) (D), Int.Rev.Code of 1954.

that which is properly due."[4] Interest should run in favor of a taxpayer only on that net sum which remains after it has satisfied all its tax obligations to the government. Here the simple fact is that plaintiff's income tax return and payment for the year 1951 were due on March 15, 1952, and because it had understated its income, plaintiff then owed $4,510,413.86 in addition to the tax it reported and actually paid. Plaintiff continued to owe all or part of that potential deficiency and accruing interest until August 28, 1953, when the second renegotiation payment wiped out the balance of the potential deficiency and resulted in the overassessment of $1,094,701.46.

However, that overassessment did not take into account the accrued deficiency interest of $384,505.21, which was due and owing in its entirety on August 28, 1953. But the fact that the assessment for deficiency interest was not made until June 29, 1959, six years after the overassessment was created, does not affect the due date of the interest. The various amounts involved in section 3771 calculations—deficiencies and overpayments alike—are not, and often cannot, be determined precisely until long after they become due or arise. In this case, the incidence of the renegotiation refunds in 1953 changed the taxpayer's status, which up to that time was one of potential deficiency with accruing interest, to one of overassessment, with the exact amounts of the deficiency tax, the deficiency interest and overassessment yet to be determined.

It would be unreasonable to allow the taxpayer to collect interest on the gross overassessment of $1,094,701.46 for the entire period during which it still owed the government $384,505.21. In effect, if plaintiff were allowed interest on the offset to June 29, 1959, as it seeks, the government would be paying for the use of money of which it theoretically deprived the taxpayer, even though during that entire period plaintiff had the use of an equal amount that it owed the government.[5] Accordingly, the government correctly offset the deficiency interest against the $1,094,701.46 overassessment on August 28, 1953, the day the overassessment was created, leaving the remainder, $710,196.25, as the true overpayment on which interest then began to run.[6]

This conclusion necessarily disposes of the plaintiff's contention that the end result of the government's computation in substance, although not in form, was the imposition of interest upon interest in violation of section 294(b), Internal Revenue Code of 1939, which provides that until interest on an income tax obligation has been assessed, no interest may run upon it. The fact is, as plaintiff concedes, that when the Service assessed the deficiency interest of $384,-505.21 on June 29, 1959, it did not include interest upon that sum which had

---

4. Jones v. Liberty Glass Co., 332 U.S. 524, 531, 68 S.Ct. 229, 92 L.Ed. 142 (1947). The *Jones* case dealt with § 322, Int.Rev. Code of 1939, but its reasoning is applicable here.

5. *See generally* United States v. Koppers Co., 348 U.S. 254, 262–263, 75 S.Ct. 268, 99 L.Ed. 302 (1955).

6. I am aware of contrary holdings, cited by plaintiff, to the effect that interest upon an overpayment continues to accrue, regardless of the existence of an offsetting amount of deficiency interest, until the date upon which the deficiency interest is assessed. *See* Northern Nat. Gas Co. v. United States, 354 F.2d 310, 317–318,

173 Ct.Cl. 881 (1965); *cf.* Mason v. United States, 160 F.Supp. 274, 275–276, 142 Ct.Cl. 19 (1958) (involving penalties, not interest). Plaintiff also relies on Industrial Dev. Corp. v. United States, 138 F.Supp. 63, 64–66 (N.D.Ill.1955) which is not in point, since it was decided under § 3771(b) (1) prior to important amendments enacted in 1958.

There are cases which look the other way. *Cf.* McDonald v. United States, 66–2 USTC para. 9516 (M.D.Tenn.1966) (otherwise unreported) (involving penalties, not interest). In any event, I am convinced that the overpayment upon which plaintiff is entitled to interest is the net and not the gross amount.

accrued by August 28, 1953. It is of course, mathematically true that since the government did not pay interest on $384,505.21 of the gross overassessment from August 28, 1953 to June 29, 1959, the taxpayer did not receive the benefit of an amount equal to interest on the $384,505.21 for the same period. But this was not the result of a levy of interest upon interest. Rather, it was the consequence of the Service's proper determination that plaintiff's unpaid obligation for the accrued deficiency interest should be offset against the gross overassessment on August 28, 1953.

Judgment for the defendant. Settle order.