Gisele C. FISHER, Personal Representative of the Estate of Bennett I. Fisher, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1087T.

United States Court of Federal Claims.

April 7, 1993.

Paul W. Oden, Seattle, WA, attorney of record for plaintiff. Miller, Nash, Wiener, Hager & Carlsen, of counsel.

Jeffrey H. Skatoff, Washington, DC, with whom was Acting Asst. Atty. Gen. James A. Bruton, for defendant. Mildred L. Seidman and Thomas D. Sykes, of counsel.

## OPINION

FUTEY, Judge.

This tax case is before the court on plaintiff's motion for summary judgment and defendant's cross-motion for partial summary judgment.[1] Plaintiff seeks a refund of $1,726,477.00 remitted to the Internal Revenue Service (I.R.S.) on November 20,

1990, from the estate of Bennett I. Fisher (Estate). Plaintiff, Gisele C. Fisher, is the personal representative of the Estate.

### Factual Background

The Estate filed a timely federal estate tax return on October 6, 1987, paying $907,759.00 in taxes. The I.R.S. examined the return and on March 22, 1990, proposed an adjustment in the amount of $1,726,-477.00. In an April 3, 1990 letter, plaintiff protested the adjustment and requested a hearing before an appeals officer. On April 18, 1990, plaintiff wrote a letter setting forth the specific legal grounds of the disagreement. On September 24, 1990, the I.R.S. mailed plaintiff a notice determining a deficiency in the amount of $1,726,477.00. In response, plaintiff transmitted a check for $1,726,477.00 to the I.R.S. on November 20, 1990 with a letter stating:

> Enclosed with this letter is an estate check payable to the Internal Revenue Service in the amount of $1,726,477. This check fully pays the deficiency (increase) in the estate tax determined in your NOTICE OF DEFICIENCY dated September 24, 1990.

> I understand under Reg. § 301.6213–1(b)(3) that this payment made by the taxpayer after the mailing of a notice of deficiency of a payment with respect to the proposed deficiency may be assessed without regard to the restrictions on assessment and collection imposed by Section 6213(a) even though the taxpayer has not filed waiver of restrictions on assessment provided in Section 6213(d). We understand that this assessment will cut off the accumulation of interest.

On December 5, 1990, plaintiff filed a refund claim requesting a refund of $1,726,-477.00 plus interest. The claim for refund was denied on January 23, 1991. The statute of limitations for the assessment of the tax expired on March 4, 1991. The I.R.S. has never assessed the amount set forth in the deficiency notice. Plaintiff filed her complaint in this court on April 16, 1991.

---

1. Plaintiff's complaint also disputes a stock valuation determination made by the Internal Revenue Service (I.R.S.) which is not part of the present motion for summary judgment.

The first issue presented to this court concerns whether the amount paid by plaintiff on November 20, 1990, was a deposit or a payment. The distinction is important. Both deposits and payments stop the running of interest and penalties on the underlying deficiency. However, the government is obligated to refund a deposit if the statute of limitations passes without assessment. A payment, alternatively, is not refundable simply because the statute of limitations has passed. Since the statute of limitations has run, the I.R.S. can no longer assess a deficiency in tax. Thus, if this court finds that the remittance was a deposit, plaintiff would be entitled to $1,726,477.00 regardless of the merits of the underlying case.

The second issue delves into the estate tax marital deduction. The I.R.S. reduced the amount of the marital deduction by $38,694.00, the amount of estate administration expenses paid out of estate income. Plaintiff contends that the administrative expenses should not reduce the amount of the marital deduction.

The third issue encompasses whether defendant correctly reclassified a $88,253.00 transfer from decedent, Bennett I. Fisher II, to his adult son as a taxable gift. Plaintiff contends that the money was spent as part of a legal obligation of support to decedent's incapacitated adult child and, therefore, was not taxable.

### Summary Judgment

■ Summary judgment is an integral part of the federal rules; it is designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 1). Summary judgment is appropriate when the pleadings raise no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the non-mov-

ant's case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp.* at 324, 106 S.Ct. at 2553. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). In the instant case, the parties do not dispute the facts as they relate to the payment versus deposit issue or the marital deduction issue. Although there is virtually nothing on the record as to the nature of the decedent's son's disability or his alleged need for support, the central issue concerns whether decedent was under a legal obligation to support his disabled adult son. This is a question of law for the court to decide. Therefore, summary judgment is appropriate as to these issues.

### Discussion

#### I. Payment versus Deposit

Early Court of Claims precedent indicated that a remittance to the I.R.S. could not be recovered by a taxpayer merely because the underlying tax had not been assessed. *Meyersdale Fuel Co. v. United States*, 44 F.2d 437, 70 Ct.Cl. 765, 783 (1930), *cert. denied*, 283 U.S. 860, 51 S.Ct. 653, 75 L.Ed. 1465 (1931). Rather, under Internal Revenue Code (I.R.C.) § 6501, the I.R.S.—

> [H]as no authority to collect a tax forcibly after the applicable period for assessment has expired. It does not forbid the government from collecting and retaining taxes voluntarily paid without assessment and which do not constitute an overpayment.

*Ewing v. United States*, 914 F.2d 499, 503–04 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). This has been interpreted to mean that if

the taxpayer remits money as a payment, the government may retain the money despite the lack of assessment. However, if the taxpayer remits the money as a deposit and *not* a payment, and there has been no assessment, the I.R.S. may not retain the taxpayer's deposit. *Ewing,* 914 F.2d at 503, 504.

The Supreme Court first dealt with this issue in *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). In *Rosenman,* a remittance of $120,000.00 was made by the taxpayer prior to a notice of deficiency. Accompanying the check was a letter stating: "[t]his payment is made under protest and duress and solely for the purpose of avoiding penalties and interest." *Id.* at 660, 65 S.Ct. at 537. The I.R.S. eventually assessed $80,224.24.00. *Id.* The Court in *Rosenman* held that the remittance was a deposit because, "the taxpayer did not discharge what he deemed to be a liability nor pay one that was asserted." *Id.* at 662, 65 S.Ct. at 538. It is significant that the taxpayer in *Rosenman* transferred to the I.R.S. an amount that had little relationship to the final amount assessed. It is also notable that the taxpayer specifically stated its protest concurrent with the submission of the remittance. The Court accordingly held that, "[t]here was merely an interim arrangement to cover whatever contingencies the future might define.... The Government does not consider such advances of *estimated taxes* as tax payments." *Id.* [Emphasis added.]

In *Charles Leich Co. v. United States,* 329 F.2d 649, 165 Ct.Cl. 127, 131, 133 (1964), the Court of Claims dealt with the characterization of a remittance:

> The question whether the remittance is a payment of tax or a mere deposit to stop the running of interest is complicated by the widely differing circumstance which prompt taxpayers to take such action. These surrounding factors are usually determinative of the question whether the remittance is a payment or a deposit.[2]

The court looked to the facts and circumstances surrounding the remittance, noting, "[h]ere the taxpayer was tendering its check with one hand, and contesting its liability to pay with the other." *Id.* at 135, *citing Lewyt Corp. v. Commissioner,* 215 F.2d 518, 522–23 (2d Cir.1954). As in *Rosenman,* the taxpayer in *Leich* made its intentions clear to the government.

In *Northern Natural Gas Co. v. United States,* 173 Ct.Cl. 881, 887, 354 F.2d 310 (1965), the court enlarged upon the important factors in determining the characterization of a remittance:

> The "other facts" we look for are whether the remittances are disorderly, or whether the remittance is followed by a contest. Where a taxpayer admits that it has some liability, but simply dumps funds on the government in amounts which have no conceivable relationship to the temporarily undetermined liability, we have no trouble holding that the remittance is not a bona fide payment and should not earn interest. Similarly, where a taxpayer remits funds *and then* contests the liability, we have felt that the *Rosenman* principle should apply. [Emphasis added.]

In *Northern,* the court held that the taxpayer's remittance was a payment, stating, "the plaintiff did not simply dump funds on the Commissioner. It replied to a deficiency notice." *Id.* at 889. However, the recent Claims Court case *Cohen v. United States,* 23 Cl.Ct. 717, 722 (1991), found that a remittance was a deposit despite the fact that the remittance was submitted after a notice of deficiency. The *Cohen* court stressed that the factor that was determinative was that the taxpayers "made clear at all relevant times that they contested [the] liability for the proposed deficiency."[3] *Id.*

■ Therefore, the characterization of a remittance is based upon a facts and circumstances test. Accordingly, as noted

---

2. Under Internal Revenue Code (I.R.C.) § 6401(c) "[a]n amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."

3. *See also Distasio v. United States,* 22 Cl.Ct. 36 (1990).

in *Leich*, an examination of plaintiff's actions surrounding the remittance of the tax is critical to the determination of whether the remittance was a deposit or a payment. 165 Ct.Cl. at 133. Important, though not individually dispositive factors include: contest of the liability, disorderly remittances, and dumping of funds. *See Leich*, 165 Ct.Cl. at 135; *Northern Natural*, 173 Ct.Cl. at 887. Other relevant factors are, "when the tax liability is defined, the taxpayer's intent in remitting the money, and how the IRS treats the remittance upon receipt." *Ewing*, 914 F.2d at 503.

█ Plaintiff received the initial proposed adjustment to tax on March 22, 1990. Within the following month plaintiff had contacted defendant to notify it of her reasons for contesting the adjustment, and to request a hearing. After the notice of deficiency was issued on September 24, 1990, plaintiff remitted the exact amount of the deficiency. Defendant considered plaintiff's remittance a payment and credited it to plaintiff's account on November 20, 1990, as an "advance payment." Therefore, this case *does not* involve any disorderly remittances or dumping of funds. The determination, then, will turn on whether plaintiff continued to contest the deficiency.

In the letter accompanying the remittance, plaintiff does not specifically state that the remittance was a deposit or that she was protesting the deficiency. Also in the letter, plaintiff noted that she understood that assessment would cutoff the accumulation of interest. Yet, *both* a payment and a deposit cut off accumulation of interest. Revenue Procedure 84–58, 1984–2 C.B. 501, 502. Although plaintiff asserted at oral argument that the reason for the remittance was to cutoff the accumulation of interest, the letter belies the incorrect belief that assessment alone would cutoff the running of interest. If plaintiff did not think that her action in submitting the remittance would cutoff the running of interest, then there appears to be no reason for

her action. Moreover, plaintiff filed a refund claim 15 days after the remittance was sent to the I.R.S. Therefore, any possible benefit plaintiff could have gained from a deposit, by stopping the running of interest, would have been short lived. The running of interest would simply have begun again if the remittance had been returned. Indeed, plaintiff's claim for refund filed on December 5, 1990, requested the return of the full amount of the remittance, *plus interest.* No interest accrues on a deposit, whereas interest does accrue on a payment. In addition, although plaintiff initially contested the proposed adjustment, the letter accompanying the remittance does not reflect a dispute and cites to the provisions of Treasury Regulation (Treas. Reg.) § 301.6213–1(b)3, which pertains to *payments* made after the mailing of a notice of deficiency. Accordingly, plaintiff did not contest the deficiency at "all relevant times."

Therefore, plaintiff's actions at the time of the remittance and, thereafter, are inconsistent with the remittance being construed as a deposit. This court finds that plaintiff's remittance of $1,726,477.00 was a payment.[4]

## II. *Marital Deduction*

█ The second issue deals with the estate tax marital deduction. During the administration of the Estate, administration expenses in the amount of $38,694.00 were paid out of estate income. The Estate deducted these expenses on the fiduciary income tax return. The I.R.S. reduced the amount of the marital deduction by this amount. Plaintiff contends that the administrative expenses should not reduce the amount of the marital deduction. The central question here, then, is whether the amount of the allowable estate tax marital deduction, under I.R.C. § 2056(a), is reduced by the amount of estate administration expenses that were paid out of estate income.

---

4. In addition, this court's finding is consonant with the rules set forth in Rev.Proc. 84–58, 1984–2 C.B. 501, 502. Rev.Proc. 84–58 provides that a payment made in complete or partial satisfaction of the deficiency is a payment of tax, *absent any instructions from the taxpayer.* Plaintiff's remittance did not include instructions.

Pursuant to I.R.C. § 2001, "[a] tax is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." The taxable estate is "determined by deducting from the value of the gross estate" certain items. I.R.C. § 2053.

One of these deductions, the marital deduction, is set out under I.R.C. § 2056(a):

[T]he value of the taxable estate shall ... be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

Thus, the taxable estate is arrived at by reducing the gross estate by, among other things, the amount of the marital deduction. The marital deduction is equivalent to "the value of any interest in property which passes or has passed from decedent to his surviving spouse." I.R.C. § 2056(a). The amount of the marital deduction, however, is limited to the interest that is included in the value of the gross estate.[5]

Although both parties agree that administration expenses paid out of estate principal reduce the marital deduction, in the instant case the expenses were actually paid out of estate income. Therefore, the parties differ on whether administration expenses are required to be paid out of estate principal. The United States Tax Court held in *Estate of Richardson v. Commissioner*, 89 T.C. 1193, 1201, 1987 WL 257908 (1987):

[W]hether an expenditure on behalf of an estate is chargeable to principal or the income produced thereby depends on the law of the state wherein decedent was a resident at the time of his death, or upon the terms of decedent's will.

Accordingly, both parties cite different portions of Washington law in support of their argument. Nonetheless, the Court of Appeals for the Sixth Circuit, in reversing, in part, the Tax Court's decision in *Estate of*

*Street v. Commissioner*, T.C.M. (P–H) ¶ 88,553 (1988), noted that the court in *Estate of Richardson*—

[D]ealt exclusively with post-date-of-death liability for interest on estate taxes. By contrast, the present case concerns ... administrative expenses.... [A]dministrative expenses are materially different from interest on taxes because administrative expenses accrue at death, whereas interest on taxes accrues after the date of death.

*Estate of Street v. Commissioner*, 974 F.2d 723, 727 (6th Cir.1992). The Court of Appeals in *Estate of Street* found that "Treasury Regulation § 20.2056(b)–4(a) instead controls the tax treatment of administrative expenses paid from income *regardless of state law or the dictates of a decedent's will.*" [Emphasis added.] *Estate of Street*, 974 F.2d at 728. Therefore, neither state law nor the decedent's will controls the tax treatment of administrative expenses. Treas.Reg. § 20.2056(b)–4(a) provides:

The marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse.... In determining the value of the interest in property passing to the spouse *account must be taken of the effect of any material limitations upon her right to income from the property.* An example of a case in which this rule may be applied is a bequest of property in trust for the benefit of the decedent's spouse but the income from the property from the date of the decedent's death until distribution of the property to the trustee is to be used *to pay expenses incurred in the administration of the estate.* 26 C.F.R. § 20.2056(b)–4(a). [Emphasis added.]

Thus, the court in *Estate of Street* found that § 20.2056(b)–4(a) applies directly to the treatment of administration expenses and requires that they be reflected in the marital deduction. *Estate of Street*, 974

---

**5.** Income received by an estate during its administration is not part of the gross estate. *Waldrop v. United States*, 137 F.Supp. 753, 133

Ct.Cl. 902, 907 (1956); *Bowes v. United States*, 593 F.2d 272, 275 (7th Cir.1979).

F.2d at 727. Essentially the court in *Estate of Street* found that administrative expenses accrue at death even though they may actually be paid later. *Id.* Therefore, the administrative expenses must be reflected in the gross estate that exists at death. If administrative expenses are paid from the income of the estate that is earned after death, then the gross estate is larger than it would have been had the administrative expenses been paid from the principal of the gross estate. The marital deduction only exists *"to the extent that such interest is included in determining the value of the gross estate."* [Emphasis added.] I.R.C. § 2056. If the gross estate is larger than it should have been, then, this will be mirrored in the size of the marital deduction. This interpretation is supported by the legislative history of the marital deduction provisions which states:

> The interest passing to the surviving spouse from the decedent is only such interest as the decedent can give. If the decedent by his will leaves the residue of his estate to the surviving spouse and she pays, or *if the estate income is used to pay, claims against the estate so as to increase the residue,* such increase in the residue is acquired by purchase and not by bequest. Accordingly, the value of any such additional part of the residue passing to the surviving spouse cannot be included in the amount of the marital deduction. [Emphasis added.]

S.Rep. No. 1013, 80th Cong.2d Sess., pt. 2, at 6 (1947). Therefore, whether the administration expenses actually are paid from estate income or estate principal is immaterial. Such amounts must be reflected in the gross estate at the date of death in order to arrive at the correct marital deduction. Accordingly, this court finds that the I.R.S. correctly reduced the marital deduction by $38,694.00.

III. *Transfer to Decedent's Son*

Decedent's emancipated adult son, Bennett I. Fisher II (Fisher), received $98,-253.00 from decedent in 1982. Plaintiff alleges that this money was transferred to Fisher, after he became disabled in a crimi-

nal assault, in order to allow Fisher to buy a home. The I.R.S. reclassified $88,253.00 as a gift.[6] Plaintiff argues that under either California or Washington law, the decedent's transfer of money to Fisher satisfied a legal support obligation and, thus, was not taxable. The court turns first to the question of which state law applies.

■ Decedent was a resident of Washington state, whereas Fisher, his son, was a resident of California. Both California and Washington have adopted the Uniform Reciprocal Enforcement of Support Act (URESA). Wash.Rev.Code Ann. § 26.-21.010 et seq. (West 1963); Cal.Civil Code § 1652 (Deering 1985). URESA unequivocally states that the law of the state where the principal obligor is present must be applied. Wash.Rev.Code Ann. § 26.21.060 (West 1963). Plaintiff contends that the statute only requires temporary presence. Thus, plaintiff argues that even decedent's fleeting presence in California would make California's laws applicable. Plaintiff's interpretation makes the laws of any state plaintiff visits applicable to plaintiff's support obligations. Choice of law doctrine, however, focuses on the state's interest in having its laws applied. *Tomlin v. Boeing Co.,* 650 F.2d 1065, 1067 (9th Cir.1981). Since Washington State is the decedent's residence, it has the most interest in decedent's support obligations. Therefore, this court will apply the law of the state of Washington to this issue.

■ Plaintiff cites three Washington cases in support of a parent's legal obligation to a disabled emancipated child. *Schultz v. Western Farm Tractor Co.,* 111 Wash. 351, 354, 190 P. 1007 (1920), granted an adult crippled child a portion of his deceased father's estate. *Van Tinker v. Van Tinker,* 38 Wash.2d 390, 229 P.2d 333 (1951), acknowledged, in *dictum,* that a cause of action for support of a disabled emancipated child might exist, however, the court declined to provide for such a cause of action in a divorce proceeding. *Mallen v. Mallen,* 4 Wash.App. 185, 480 P.2d 219 (1971), followed *Van Tinker* in

**6.** Under I.R.C. § 2503(b), the first $10,000 of a money gift may be excluded.

holding that a divorce proceeding does not have jurisdiction to order support of adult children. Thus, there is no Washington State case law which actually recognizes and enforces a cause of action for legal support of an emancipated disabled child. Plaintiff's position would require this court to extend the existing scope of Washington State law. This court declines to do so. Decedent was under no legal obligation to support his son after emancipation. Accordingly, the transfer of $98,253.00 was a gift.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendant's cross-motion for partial summary judgment is granted. The parties are directed to file a joint status report as to the remaining issue in this case by May 10, 1993.