**VIRGINIA ELECTRIC AND POWER COMPANY, Successor to Virginia Public Service Company**

v.

**The UNITED STATES.**

No. 37-52.

United States Court of Claims.
Nov. 30, 1954.

H. Brice Graves, Ann Arbor, Mich., for plaintiff. T. Justin Moore, and Hunton, Williams, Gay, Moore & Powell, Richmond, Va., were on the brief.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

This is a suit for additional interest which, the plaintiff contends, the United States should have paid in connection with the refund to it of excess profits taxes paid by the plaintiff's predecessor. The Virginia Public Service Company paid the taxes in question for the year 1941. In 1944 that company was merged into the plaintiff. The refund, the interest on which is here involved, was made after 1944, and was made to the plaintiff, which had succeeded to all the rights of the Virginia Public Service Company. Hereinafter the words "plaintiff" and "taxpayer" will be used indiscriminately in referring to either the plaintiff or its predecessor.

For the year 1941 the plaintiff paid an income tax of $486,898.13, and an excess profits tax of $497,125.11. The income tax was smaller than it would have been if there had been no excess profits tax or a lesser one, since the excess profits tax is deductible from income, for income tax purposes.

In its return for the year 1942, the plaintiff showed an income tax liability of $111,696.91, but showed an excess profits tax credit of $754,833.05 more than the excess profits net income. There was, therefore, not only no excess profits tax due, but there was a large unused credit which, under the provisions of Section 710(c) of the Internal Revenue Code, 26 U.S.C.A., could be carried back to reduce the excess profits income and excess profits tax for the preceding year, 1941. It was agreed between the plaintiff and the tax authorities that the carryback reduced the plaintiff's 1941 excess profits tax by $430,437.37. As we have said, an excess profits tax, because it is deductible from the income subject to income tax, reduces the income tax. Therefore, when the carryback reduced the plaintiff's 1941 excess profits tax by $430,-437.37, it increased the 1941 income tax income, and the income tax. The amount of that increase was $133,435.-56. Thus, retroactively, by reason of the carryback, the plaintiff was in the position of having overpaid its 1941 excess profits tax by $430,437.37, and underpaid its 1941 income tax by $133,435.56.

On June 2, 1943, the plaintiff filed a claim for the refund of the $430,437.37 of excess profits tax for 1941. Section 3771 (e) of the Internal Revenue Code provides that interest payable by the Government to the taxpayer on an overpayment of excess profits tax, which overpayment results from the operation of a carryback, shall not begin to accrue until the taxpayer has filed a claim for refund. Similarly, Section 292(c) provides that interest on the income tax deficiency which always results from the operation of the carryback, shall not begin to accrue in favor of the Government until the taxpayer has filed its claim for the refund of the excess profits tax.

The claim for refund was, as we have said, filed on June 2, 1943. On that date, therefore, interest began to accrue to the plaintiff against the Government on some $430,000.00, and to the Government against the plaintiff on some $133,000.00. We now have the interest running. Our problem is to determine how long it ran, in each direction.

On June 25, 1947, the Commissioner of Internal Revenue assessed the income tax deficiency, which, because of a small adjustment, was now determined to be $133,840.91, and interest thereon from June 2, 1943, of $23,348.30, a total of $157,189.21. That interest was computed, not to June 25, 1947, the date of the assessment, but only to April 28, 1946, because, 30 days before April 28, 1946, the plaintiff had filed a waiver, which is provided for in Section 272(d) of the Internal Revenue Code. Section 272(a) (1) forbids the assessment of a deficiency until 90 days have elapsed after the mailing to the taxpayer of a notice by registered mail advising him of the impending deficiency. Within the 90 days, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. But if the taxpayer does not desire to do that, Section 272(d) authorizes him to file a written notice waiving his right to do so, and consenting to the immediate assessment and collection of the tax. An important reason for the taxpayer, if he has no real objection to the assessment of the deficiency, to file such a waiver is that Section 292(a) provides that interest on the deficiency shall cease to accrue on the 30th day after the filing of the waiver, or on such earlier day as the deficiency is assessed.

Pursuant to the above provisions, interest against the plaintiff on its deficiency of $133,840.91 ceased to accrue on April 28, 1946, the 30th day after the filing of its waiver. The Government agrees to that. But what of the interest running in the other direction, from the Government to the taxpayer, on the larger sum of $431,744.96. As we have said, it began to accrue on June 2, 1943. Of that principal debt, $157,189.21 was liq-

uidated by applying it against the plaintiff's deficiency, and the interest accrued on it. That left a balance of $274,555.75 which was refunded to the plaintiff on July 12, 1949, with interest running from June 2, 1943. That part of the transaction is not in dispute.

The dispute is as to how long interest accrued in favor of the plaintiff on the $157,189.21, that part of the plaintiff's overpayment of its excess profits taxes which was retained by the Government to pay the deficiency of the plaintiff's income taxes, with accrued interest. The Government, in making its refund, included interest on that amount only to April 28, 1946, the date on which it stopped charging the plaintiff interest on the plaintiff's deficiency. If it were simply a question of ordinary accounting, the Government would, it seems to us, be right. After the plaintiff had filed its waiver, the amount of its obligation to the Government was agreed upon, and the Government had more than enough of the plaintiff's money in hand to pay itself. The natural thing would be for it to credit itself with that amount, and continue to charge itself only with the balance.

But the plaintiff points to a statute which, it says, specifically requires another method of computation. Section 3771(b) (1) of the Internal Revenue Code says that interest shall be allowed and paid

"In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment of a tax imposed by the Revenue Act of 1921, 42 Stat. 227, or any subsequent Revenue Act, then to the date of the assessment of that amount."

As we have seen, the plaintiff's deficiency was not assessed until June 25, 1947, although the plaintiff had filed its waiver consenting to immediate assessment in March of 1946. The interest on $157,189.21 at six percent for that period of more than a year amounts to $10,897.

The Government says that it has been the uniform practice and policy of the Treasury, based upon equity and fairness, to do what it did in this case. It has refused to recognize the applicability of Section 3771(b) (1) to such cases. Government counsel, in justification of at least the result reached by the Government, argues that the cases of carrybacks, reducing the excess profits taxes and increasing the income taxes of prior years, do not create true deficiencies, nor true overassessments. They involve, not disputes, but mere mathematical recalculations. They create, so he says, no basis for any statutory notice of a deficiency or for the filing of a statutory waiver, or an appeal to the Tax Court. They create no basis for a formal credit, such as is referred to in Section 3771(b) (1). Counsel says that the statutory phrase "in the case of a credit" must mean the ordinary kind of a case in which a liability for one taxable year is collected by means of a credit from an overpayment for a different year. Counsel concedes that the Commissioner of Internal Revenue, in his handling of the plaintiff's affairs, used the words deficiency, overassessment, waiver, and credit as if this were a case where the statutes were applicable. We think the labels were correctly applied, and that the statutes were applicable. We think that the Commissioner of Internal Revenue did not have the power, in the teeth of the statute, to treat the plaintiff's situation as if it were a mere matter of rational accounting. As to the equities of the situation, we do not know why the Commissioner failed, for more than a year, to make the assessment which had been consented to. If he had made the assessment promptly, the interest here sued for would not have accrued.

The plaintiff is entitled to recover. Entry of judgment is suspended to await the filing by the parties of a stipulation showing the amount due.

It is so ordered.

LARAMORE, WHITAKER, and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting).

I cannot agree to the conclusion reached by the majority. When plaintiff signed the waiver, the parties were in complete agreement as to all issues involved. The actual assessment was simply a *pro forma* matter.

The filing of the waiver stopped interest, 30 days after the signing, on the amount due the Government. If the purely ministerial act of levying the deficiency assessment had been made within the 30-day period, it would have stopped the accumulating interest on the item due the plaintiff. To claim interest on an item that for all practical purposes had been settled by agreement of the parties places undue emphasis on the technical provisions of the law, and contrary to its manifest purpose.

The parties were in complete agreement as to both items 30 days before April 28, 1946. All parties understood what their rights were. Since interest was stopped as of that date by virtue of the agreement on the item due the Government, it should have ended for the same reason on the amount due the plaintiff. Rodgers v. United States, 108 F. Supp. 727, 123 Ct.Cl. 779, 783.