MADDEN, WHITAKER, and LITTLETON, Judges, concur.

**MATSON NAVIGATION COMPANY**

v.

**The UNITED STATES.**

No. 636–53.

United States Court of Claims.

April 5. 1955.

358

Hart H. Spiegel, San Francisco, Cal., for plaintiff. Theodore R. Meyer and Brobeck, Phleger & Harrison, San Francisco, Cal., were on the briefs.

Elizabeth B. Davis, with whom was H. Brian Holland, Asst. Atty. Gen., for defendant. Andrew D. Sharpe, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

■ The plaintiff sues to recover $43,843.62 with interest. Both parties have moved for summary judgment. The plaintiff duly filed its excess profits tax return on March 15, 1945, for the calendar year 1944 and paid its 1944 excess profits tax in the amount of $2,028,231.73 ($2,253,590.81 less 10 percent credit under section 784 of the Internal Revenue Code of $225,359.08) in the following quarterly installments: (1) $563,397.71 on March 15, 1945; (2) $563,397.70 on June 15, 1945; (3) $450,718.16 on September 17, 1945; and (4) $450,718.16 on December 17, 1945. In May 1947, the Commissioner of Internal Revenue credited or refunded $1,601,218.31 of this tax to the plaintiff because of the application of a tentative carry-back adjustment or carry-back allowance caused by an unused excess profits credit carry-back from the year 1946.

On September 10, 1947, the plaintiff filed a claim for refund of $427,013.42. The Commissioner allowed this sum as an overpayment and credited and refunded it in a manner to be discussed later. This $427,013.42 plus the $1,601,218.31 allowed by reason of the carry-back resulted in the plaintiff recovering all of its excess profits taxes paid for 1944. The parties agree that section 3771(e) of the Internal Revenue Code, 26 U.S.C. A., precluded the plaintiff from recovering any interest on the $1,601,218.31.

There are two questions presented in this case. The first is when did interest start accruing on the $427,013.42 overpayment for 1944. The second is when did it stop.

The answer to the first question depends on the date the plaintiff "overpaid" its excess profits tax. The Supreme Court held in Blair v. United States ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983, that where taxes are paid in installments, there is no overpayment of taxes until the date that the total amount of the installments paid first exceeds the total amount of tax due. Therefore, interest is allowed from the date of the payment of that installment which first exceeded the correct amount of tax due. Ohio Steel Foundry Co. v. United States, 38 F.2d 144, 69 Ct. Cl. 158, 170.

The plaintiff contends that this date was March 15, 1945, since ultimately it recovered all of its excess profits taxes for 1944. The defendant contends that this date was December 17, 1945, the date of the last installment, because the right to the $1,601,218.31 overpayment resulting from the carry-back did not arise until 1946. We agree that the date of the payment of that installment which first exceeded the correct amount of tax due was December 17, 1945.

The plaintiff argues that because it recovered all of its excess profits taxes for 1944 that the total due on March 15, 1945, was zero. Here lies the plaintiff's insuperable barrier. The total tax due on March 15, 1945, was not zero. The annual tax concept expounded in Burnet v. Sanford, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, and in the many cases following that decision, requires that Federal income taxes be determined on an annual basis under the facts and circumstances in existence in the year in question. This concept and its rationale

are equally applicable to excess profits taxes. The $1,601,218.31 carry-back did not arise from the taxable year 1944, but rather from the taxable year 1946. This $1,601,218.31 was due in 1945, and was not and could not have been abated until the taxable year 1946, the taxable year giving rise to the carry-back. It did not become an overpayment until 1946 and we see no reason why it should be treated as an overpayment before that date. This being so, the date of the payment of that installment which first exceeded the correct amount of excess profits tax due for 1944 was December 17, 1945. Therefore, interest started to run on the $427,013.42 on December 17, 1945.

█ This brings us to the second question of when the interest terminated. The plaintiff alleged four claims for relief in its petition. The first is to recover interest on $97,003.48, which is a portion of the $427,013.42 overpayment that was credited against a 1946 deficiency assessed on January 18, 1951. The Commissioner of Internal Revenue allowed interest on this sum to 30 days after the filing of the waiver of restrictions and assessment and collection. We have held that interest accrues under section 3771(b)(1) of the Internal Revenue Code on the amount of the overpayment that is credited against the deficiencies and interest thereon until the assessment date of the deficiencies against which it is credited. Abney Mills v. United States, Ct.Cl., 130 F.Supp. 353, and the cases cited therein. Accordingly, the plaintiff is entitled to have the interest on the $97,003.48 part of the overpayment computed from December 17, 1945, to January 18, 1951.

The plaintiff's second claim, including concessions made in its brief, is to recover interest on $303,062.47, which is the portion of the $427,013.42 overpayment that has been refunded to the plaintiff, from March 15, 1945, to December 17, 1945. Inasmuch as we have held that the plaintiff did not overpay its taxes for 1944 until December 17, 1945,

the plaintiff is not entitled to recover on this claim. The plaintiff was also refunded $26,269.91 of the $427,013.42 because of an unused excess profits credit carry-back. No interest was allowed on this sum, and the plaintiff concedes for purposes of its motion that this was proper.

The plaintiff's third claim is to recover interest on $677.56, which is the portion of the $427,013.42 overpayment that was credited against an additional assessment of income tax for 1945, from March 15, 1945, to December 17, 1945. Recovery on this claim is denied for the same reason that recovery on the second claim was denied.

█ The plaintiff's fourth claim is to recover $10,865.81, which represents interest erroneously collected, with interest thereon from the date of payment, January 18, 1951. The defendant concedes that the plaintiff is entitled to this sum with interest thereon, except for its argument that this sum with interest thereon was properly credited against other interest believed due from the plaintiff. This other interest was believed to be due from the plaintiff solely because the Commissioner of Internal Revenue had allowed interest on parts of 1943 and 1944 overpayments to the date beyond the effective date of the waiver of restrictions on assessment and collection of the deficiencies against which these overpayments have been credited, but not to the assessment date of those deficiencies. The Commissioner of Internal Revenue thought that these interest allowances were excessive and, therefore, credited the interest erroneously collected with interest thereon against these believed excessive allowances, and refunded, by check issued on October 10, 1952, the $309.92 balance. This was done, of course, because the Commissioner was of the opinion that interest on the overpayment credited against a deficiency stopped running on the same date as the interest on the deficiency against which the overpayment was credited. As we have already pointed out this was incor-

rect and, therefore, the other interest believed due by the defendant was not in fact due. The plaintiff did not accept the check for $309.92, but returned it to the Commissioner of Internal Revenue. Section 3771(b) (2) of the Internal Revenue Code provides:

"[Such interest shall be allowed and paid as follows:] Refunds. In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon."

It is clear from this section that the failure of the plaintiff to accept the $309.92 check does not alter the fact that interest stopped running on $309.92 of the $10,865.81 overpayment sometime within 30 days before the date of the refund check. The plaintiff is entitled to recover $10,555.89, with interest thereon, from the date of overpayment, January 18, 1951. Obviously, the plaintiff is entitled to the $309.92 check which it returned to the Commissioner, plus interest thereon from the date of overpayment, January 18, 1951, to a date within 30 days of the date of the refund check.

For purposes of its motion, plaintiff concedes that it is not entitled to interest on its first claim.

The plaintiff's motion for summary judgment is granted, and the defendant's motion for summary judgment is denied.

Judgment is suspended pending the filing of a stipulation showing the exact amount due in accordance with this opinion.

It is so ordered.

MADDEN, WHITAKER and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting).

For the reasons which I gave in dissenting from the opinion of the court in Virginia Electric and Power Company v. United States, Ct.Cl., 126 F.Supp. 178, I respectfully dissent from the court's conclusion that interest on the overpayments continues beyond thirty days after the filing of the waivers.