The **JEWEL SHOP, INC.**

v.

The **UNITED STATES.**

No. 274–61.

United States Court of Claims.

Nov. 12, 1965.

Jacquin D. Bierman, New York City, attorney of record, for plaintiff. Chase & Bierman, New York City, of counsel.

Sheldon P. Migdal, Washington, D. C., with whom was Acting Asst. Atty. Gen. Richard M. Roberts, for defendant. C. Moxley Featherston, Lyle M. Turner, and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

This case comes to us on stipulated facts which plaintiff claims make out a good cause of action for the recovery of interest allegedly due on income tax over-

payments. On June 18, 1951, the Commissioner of Internal Revenue made a jeopardy assessment against The Jewel Shop, Inc., a South Carolina corporation, of additional income and excess profits taxes including fraud and delinquency penalties and interest for the taxable years 1944 through 1950. Plaintiff paid only part of the alleged deficiencies. On July 13, 1956, the Commissioner assessed plaintiff for deficiencies in retailer's excise taxes covering the years 1942 through 1947. Plaintiff petitioned the Tax Court for a redetermination of the income and excess profits tax deficiencies, and on April 1, 1957 that court entered an order determining that there were both deficiencies and overpayments. Because total overpayments exceeded deficiencies, the District Director first credited the overpayments against the unpaid income and excess profits tax deficiencies. He then credited the overpayments against the unpaid deficiencies in the retailer's excise taxes. He refunded plaintiff the balance.

The District Director computed the interest component of deficiencies and overpayments in the following manner. In crediting the overpayments against the unpaid deficiencies in income and excess profits taxes (those determined by the Tax Court), he charged delinquency interest[1] on the deficiency from June 19, 1951 (notice and demand for payment date) to May 29, 1957 (date Commissioner signed and scheduled the overpayments). However, he only allowed interest on the overpayment from the date of overpayment to June 18, 1951. As to the deficiencies in the retailer's excise taxes, the District Director charged interest on the deficiency from July 16, 1956[2] (notice and demand for payment date) to May 29, 1957. He allowed interest on the overpayment from the date of overpayment to July 13, 1956.

Reference to the facts illustrates the District Director's method of computation. For fiscal 1944, the Tax Court determined that plaintiff overpaid its income tax by $3.04, its declared value excess profits tax by $3,570.05, and its excess profits tax by $22,948.97—a total overpayment of $26,522.06. The District Director applied $5,146.11 of the 1944 excess profits tax overpayment against the $10,798.70 excess profits tax deficiency determined for fiscal 1946. Because the overpayment credit did not come into being until May 29, 1957, delinquency interest of $1,833.95 ran on the 1946 deficiency from assessment until 1957. By contrast, the District Director allowed no interest on the *same* $5,146.11 for the *same* period (June 19, 1951 to May 29, 1957). He allowed interest only from the overpayment date to the jeopardy assessment date. In other words, defendant has charged about $1,800 for monies which plaintiff should have paid when assessed in 1951, but defendant has *not* paid interest on the overpayment (from 1951 to 1957) which was in existence for this *same* period and which was used to satisfy the deficiency. Plaintiff claims interest on all the overpayments for the period from assessment (1951 as to income and excess profits tax deficiencies and 1956 as to retailer's excise tax deficiencies) to May 29, 1957. The parties agree that the applicable statutory provisions are in the Internal Revenue Code of 1939.

It is clear that plaintiff would be entitled to interest on the overpayments for the period from assessment to May 29, 1957, if there were no deficiencies against which to credit the overpayments. Internal Revenue Code of 1939, § 3771(a), (b) (2). For tax refunds, the statute provides that six percent interest runs from the date of overpayment "to a date preceding the date of the refund check by not more than thirty days."

---

1. The interest due on the deficiency from the return date to the assessment date is included in the amount to be assessed. Internal Revenue Code of 1939, § 292 (a). "Delinquency interest" runs from the date of notice and demand until it is paid. Internal Revenue Code of 1939, § 294(b).

2. The same principle applies as in footnote 1, supra.

Internal Revenue Code of 1939, § 3771 (b) (2). Plaintiff's problem comes about because defendant *credited* the overpayments against the income and excess profits tax deficiencies and the retailer's excise tax deficiencies determined by the Tax Court and the Service respectively. Where the *credit* procedure is used, section 3771(b) (1) applies and that provides for somewhat different treatment from section 3771(b) (2), the refund provision paraphrased above. Section 3771(b) (1) states:

Such interest shall be allowed and paid as follows: * * * In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken, *but if the amount against which the credit is taken is an additional assessment * * * then to the date of the assessment of that amount*. [Emphasis added.]

Defendant applied this provision on the theory that the jeopardy assessment on June 18, 1951, and the assessment of retailer's excise taxes on July 13, 1956 were "additional assessments" which stopped the running of interest on overpayments used as credits. While we think this treatment is anomalous and inequitable, we find no escape from the statutory mandate and are accordingly constrained to hold for defendant.

 Because the statutory scheme for crediting overpayments against income and excess profits taxes differs somewhat from the procedure for crediting overpayments against retailer's excise taxes, we shall discuss the credit procedures separately. Looking first to the District Director's procedure in crediting overpayments against unpaid income and excess profits tax deficiencies determined by the Tax Court, we note that this was required by the statute. Internal Revenue Code of 1939, §§ 322(a) (1), (d), 603, 729(a). Section 322(a) (1) is not discretionary as shown by the following language:

Where there has been an overpayment of any tax imposed by this chapter, the amount of such overpayment *shall be credited* against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance shall be refunded immediately to the taxpayer. [Emphasis added.]

Plaintiff argues that where an overpayment is determined by the Tax Court, the rule is different. The argument is that section 322(d) qualifies section 322 (a) (1), and gives the Commissioner discretion to credit or refund. We do not agree with plaintiff's reading of the statute. Section 322(d) simply states that when the decision of the Tax Court has become final the amount of overpayment "shall * * * be credited or refunded to the taxpayer." This is not language of discretion, however. The statute reads this way to cover what will probably be the most common case; that is, where there is no outstanding deficiency and the Tax Court finds there is an overpayment for the one year under consideration, there "shall be" a refund. However, where the Tax Court has a few years in issue and determines both deficiencies and overpayments, or where it determines an overpayment and there exist outstanding assessable deficiencies, there "shall be" a credit because the mandatory language of section 322(a) (1) applies. In any event, we conclude that even if the District Director had discretion to refund and not to credit, his actions would not constitute an "arbitrary and capricious" abuse of discretion. This point is developed more fully in the discussion of the credit against the retailer's excise taxes.

Once it is determined that the crediting procedure has been properly used, section 3771(b) (1) automatically applies, assuming that a jeopardy assessment is an "additional assessment." This is not the first time that application of this provision has worked an inequitable result. This court has had this same provision before it on six recent occasions and has decided to read the statute literally. E. I. duPont deNemours

& Co. v. United States, 147 F.Supp. 486, 137 Ct.Cl. 191 (1957); Ash Grove Lime & Portland Cement Co. v. United States, 132 F.Supp. 213, 132 Ct.Cl. 7 (1955); Matson Navigation Co. v. United States, 130 F.Supp. 357, 131 Ct.Cl. 199 (1955); Abney Mills v. United States, 130 F. Supp. 353, 131 Ct.Cl. 159 (1955); Dewey Portland Cement Co. v. United States, 128 F.Supp. 385, 131 Ct.Cl. 41 (1955); Virginia Elec. & Power Co. v. United States, 126 F.Supp. 178, 130 Ct.Cl. 189 (1954). Other courts read the statute similarly. Felixson v. United States, unofficially reported, 6 Am.Fed.Tax R.2d 6109 (S.D.Calif.1960); Pan American World Airways, Inc. v. United States, 119 F.Supp. 144 (S.D.N.Y.1953); Max Factor & Co. v. United States, unofficially reported, 43 Am.Fed.Tax R. 1188 (S.D.Calif.1951).

In the six cases before this court, the government took an inconsistent position to the one it now assumes. The fact pattern was quite simple. In response to the Commissioner's determination of a deficiency, taxpayers waived the restrictions on assessment to stop the running of interest. Internal Revenue Code of 1939, § 272(d). In fact, the government did not bother to assess the asserted deficiencies within the 30-day grace period. Subsequently, both overpayments and deficiencies were determined by the Tax Court and assessment of outstanding deficiencies was made. Taxpayers claimed in this court that while interest on the deficiencies stopped 30 days after the waiver of restrictions on assessment, interest on the overpayments ran to the date of assessment under the express language of section 3771(b) (1). The government argued inequity and lack of mutuality, but we held for taxpayers and pointed out that the supposed inequity resulted from the government's failure to assess within 30 days of the waiver of restrictions.

■ Plaintiff attempts to distinguish those cases on the ground that no inequity resulted in them. Unfortunately this is not a tenable ground for distinction. In addition, plaintiff argues that the cited cases are different because none involved jeopardy assessment. The theory is that jeopardy assessment is not comprehended by the term "additional assessment." The difficulty with this contention is that the statute gives no warrant for such a distinction. Section 3771(c) defines "additional assessment" as "a further assessment for a tax of the same character previously paid in part, * * * [which] includes the assessment of a deficiency of any income tax * *." Although this language does not expressly include jeopardy assessment, the interrelationship of the procedural provisions of the Code is such that "assessment" necessarily includes all forms of assessment, unless otherwise expressly provided. The legislative history is neutral on this issue. However, the very fact that from the time of its introduction to the present, jeopardy assessment has been a part of the assessment process indicates that it must be a part of the process for purposes of "additional assessment." See Revenue Act of 1924, §§ 274 (d), 279(a); H.Rep. No. 179, 68th Cong., 1st Sess., pp. 25–26, 62, 64; S.Rep. No. 398, 68th Cong., 1st Sess., pp. 31–32. In other words, it is clear that Congress gave the Commissioner jeopardy assessment power to use sparingly in those extraordinary cases where use of normal assessment procedures would most likely put ultimate collection in jeopardy. This procedure was called jeopardy "assessment" advisedly. It was thought to be an *alternative* method of assessment.

■ We are given support in our conclusion by reference to section 83 of the Technical Amendments Act of 1958, 72 Stat. 1606, and the accompanying legislative history. H.Rep. No. 775, 85th Cong., 1st Sess., pp. 45–46, 103; S.Rep. No. 1983, 85th Cong., 2d Sess., pp. 99–100, U.S.Code Cong. & Admin.News 1958, p. 4791. The 1954 Code was amended, according to the reports, to eliminate the "erratic differences" in the treatment of interest on deficiencies and overpayments in the credit situation. The new provision assures mutuality by terminating the interest on the deficien-

cy and the overpayment during any period that they offset each other. Internal Revenue Code of 1954, §§ 6601(g), 6611(b) (1). The reports do not mention the jeopardy assessment case specifically, but are certainly broad enough to cover it. From our point of view, we think it is significant that in 1958 Congress detected an infirmity in the way section 3771(b) (1) operated and sought to amend it prospectively. Certainly plaintiff is correct in stating that the views of a subsequent Congress cannot be taken to reflect the intent of an earlier Congress. Thus we do not feel that this technical amendment alone forces us to read section 3771(b) (1) literally. We do feel, however, that it should be given considerable weight as an interpretation by the law-making body of the scope of the earlier provision.

Looking to the District Director's procedure in crediting overpayments against the unpaid retailer's excise taxes, we note that this was discretionary. Internal Revenue Code of 1939, § 3770(a) (4). That provision states:

> Notwithstanding any provision of law to the contrary, the Commissioner *may, in his discretion*, in lieu of refunding an overpayment of tax imposed by any provision of this title, *credit* such overpayment *against any tax due* from the taxpayer under any other provision of this title. [Emphasis added.]

We do not find any abuse of discretion even though the exercise of the discretion to credit resulted in plaintiff's not getting interest it would have received had the Commissioner given plaintiff a refund. This is perhaps a harsh judgment, but we think it is consistent with the demands of the administration of the revenue laws. We simply cannot say that the District Director exercised his discretion in an arbitrary and capricious manner. There are very sound reasons for crediting overpayments against outstanding deficiencies. When the government has a "bird in the hand," it cannot be unreasonable for it to apply it against outstanding debts rather than to

rely on the recipient's coming forward at a later date. Unfortunately, the District Director's action in this case triggered section 3771(b) (1) which created a harsh result. However, this does not constitute an abuse of discretion; and while plaintiff is no doubt correct that the parties might have used an escrow arrangement to protect the government in a refund procedure, we cannot require the Commissioner to develop special procedures to correct all of the inequities that are built into a statute as complicated as the Internal Revenue Code.

Plaintiff is not entitled to recover and its petition is, therefore, dismissed.