**GENERAL ELECTRIC COMPANY**

v.

**The UNITED STATES.**

No. 228–62.

United States Court of Claims.

Dec. 16, 1966.

Herbert L. Awe, Washington, D. C., for plaintiff, John P. Lipscomb, Washington, D. C., attorney of record, C. Rudolph Peterson, Washington, D. C., of counsel.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant, Lyle M. Turner and David D. Rosenstein, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

LARAMORE, Judge.

This is an action to recover $205,447.77 which plaintiff paid as interest on excess profits tax deficiencies for the taxable year 1944. In issue is the proper method of computing interest on deficiencies under section 292(a) of the Internal Revenue Code of 1939.[1]  26 U.S.C. § 292(a) (1952 Ed.).[2]  The facts have been stipulated.

On March 15, 1945, plaintiff filed a tentative return showing a 1944 excess profits tax of $128,000,000. Pursuant to section 56(b) (2) (A), it elected to pay this tax in four quarterly installments, the first $32,000,000 to be paid as of March 15, 1945, the last on December 15, 1945. After paying the second installment, but before paying the third, plaintiff recomputed its 1944 liability and filed a "final" return on September 14, declaring a tax of $79,213,845.41. The Collector divided this amount into quarters and credited $59,410,384.04 (three-quarters of the "final" declared tax) of plaintiff's prior payments of $64,000,000 against the 1944 excess profits tax liability, accrued through the third installment. Plaintiff paid the balance of $19,803,461.36 on December 14, 1945. On March 5, 1946, plaintiff filed an application for a tentative additional amortization allowance of $5,339,772.98 to reduce 1944 taxable income. Section 124(j). Under this so-called "quickie refund" provision, the Commissioner of Internal Revenue made a summary examination of the return and tentatively granted the additional allowance. This reduced plaintiff's 1944 excess profits tax by $4,565,505.90, which amount was refunded to plaintiff on May 27, 1946. The refund was augmented by six percent interest of $109,-321.97 computed from December 15, 1945 (the last installment payment date) to May 9, 1946 (the date preceding the date of the refund check by not more than 30 days).

Presumably, the Commissioner started interest running on the last installment date because section 3771(b) (2) provides for interest on overpayments

---

1. See n. 5, infra, for a possible alternative argument under section 3771, the overpayment interest provision.

2. All section references are to the Internal Revenue Code of 1939, 26 U.S.C. (1952 Ed.), unless otherwise indicated.

"from the date of the overpayment" and the courts have held that the date of overpayment of taxes paid on the installment method is the date the total amount paid first exceeds the amount due. Blair v. United States ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983 (1926); Matson Navigation Co. v. United States, 130 F.Supp. 357, 358–359, 131 Ct.Cl. 199, 201–202 (1955). There is no question that before December 15, 1945 plaintiff's installment payments did not exceed the total amount finally due, either as established by plaintiff's "final" return or ultimately after all deficiency computations.

Thereafter, in December 1946 and again in April 1953, the Commissioner determined deficiencies in plaintiff's 1944 excess profits tax totaling $6,764,-669.67, which plaintiff accepted and paid. In computing interest against plaintiff on the deficiencies, the Commissioner used March 15, 1945 as the starting date. This was thought to be required by section 292(a) providing for six percent interest on deficiencies "from the date prescribed for the payment of the tax (or, if the tax is paid in installments, from the date prescribed for the payment of the first installment)." The effect of the Commissioner's calculations of interest on the tentative adjustment and the deficiencies has been to charge plaintiff six percent interest on $6,764,669.67 from March 15, 1945 and credit plaintiff with six percent interest on $4,565,505.90 only from December 15, 1945. Thus, for the 9-month period March 15 to December 15, 1945, plaintiff has not been credited with interest on the amount of the tentative adjustment to which it was entitled,[3] although it has been charged interest on the amount of the deficiency

to which defendant was entitled. Plaintiff here claims interest on the tentative adjustment for this period.

In defending against this claim, the government argues that overpayment and underpayment interest procedures are clearly provided for by statute, and that whatever the equities, the Commissioner properly followed the statutory mandate. Section 271(a) defines a "deficiency" as "the amount by which the tax imposed by this chapter[4] exceeds the excess of —(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return * * * over—(2) the amount of rebates, as defined in subsection (b) (2), made." "Rebate" is defined as "an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by this chapter was less than [the amount shown in the return plus any deficiency]." Applying these provisions to the facts, defendant notes that the Commissioner correctly computed plaintiff's deficiency, i. e., he determined after audit that the correct tax was $81,413,009.18 which was $6,-764,669.67 more than the $74,648,339.51 which plaintiff had paid after giving effect to the 1946 tentative adjustment "rebate." The deficiency having been correctly determined, the defendant argues that the interest calculation was crystal clear; section 292(a) says interest "shall be paid [upon the amount determined as a deficiency] * * * from the date prescribed for the payment of the first installment," here March 15, 1945.

■ Neither party questions the correctness of the Commissioner's determination of interest on the rebate, even in the light of the subsequent determination of the "correct" deficien-

3. It is not strictly accurate to say that plaintiff was "entitled" to the full $4,-565,505.90 tentative adjustment. The stipulation shows that in April 1953, plaintiff's total amortization allowance for 1944 (as claimed in the original return and augmented by the 1946 tentative adjustment) was reduced by $1,914.94.

This resulted in a tax adjustment of $1,-637.27. This is, of course, a negligible percentage of the tentative adjustment.

4. Section 271(a) is part of chapter 1; the excess profits tax is found in chapter 2. The procedural provisions of chapter 1 are made applicable to excess profits taxes by sections 603 and 729(a).

cies,[5] so our sole task is to determine whether the government is correct in its position that the Commissioner properly applied sections 271 and 292.[6] The plaintiff appears to have two arguments, each a facet of what it calls "the fundamental principle for the allowance of interest." The "fundamental principle" is: interest accrues to the person who has the right to the use of the funds. Plaintiff asserts this is made clear by Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950) and United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955). In both, the Court held that interest should accrue to the government on taxes to which it was entitled even though those taxes were subsequently abated by relief provisions.[7] In the present context, the first argument is that for purposes of computing interest for the period from March 15 to December 15, 1945, the real underpayment or deficiency was

$2,199,163.77 and not $6,764,669.67. This is a kind of "net" deficiency analysis, and is arguably a proper approach because before plaintiff got the "quickie refund" in 1946, the actual deficiency (as subsequently determined) was the $81,413,009.18 correct tax, less the $79,-213,845.41 tax declared and paid in installments. Under a use-of-money theory, the goverment could not be entitled to interest on any more than the $2,199,163.77 to which it retroactively became entitled by virtue of the deficiency determination. This was essentially the thinking of the District Court in Central Fibre Products Co. v. United States, 115 F.Supp. 147 (N.D.Ill.1953), which plaintiff urges us to follow. The difficulty with this approach is that it has no footing in the statute. This was pointed out in a later District Court case and by implication in a Court of Appeals case reversing the relevant part of the lower court decision relied upon in Central Fibre Products Co., supra. Standard Oil Co. v. United States, 175

5. As explained in the text, the Commissioner used December 15, 1945 as the starting date for interest on the rebate. This was proper because the date of overpayment was the final installment date. It seems that plaintiff could have argued that by virtue of its paying the deficiencies with interest running from March 15, 1945, the first installment date, it constructively overpaid its tax, at least to the extent of the rebate, as of the earlier date. In other words, this view of the transactions with defendant would make March 15, 1945 "the date of the overpayment" for purposes of the interest computation under section 3771(b) (2). A similar argument was made in Matson Navigation Co. v. United States, 130 F. Supp. 357, 358, 131 Ct.Cl. 199, 201 (1955), and rejected for reasons which are not present here. See United States v. Koppers Co., infra, for an analogous theory. We do not pass on the merits of this argument, however, other than to note that it may run afoul of. the rule that the date of overpayment is the date the total amount paid first exceeds the amount due—i. e., the deficiency payment could be considered simply an addition to the first installment thereby still leaving the last installment the date of overpayment—and to observe that any theory of "constructive overpayment"

may confuse the already difficult "payment" area that has grown out of Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945). See Northern Natural Gas Co. v. United States, 354 F.2d 310, 173 Ct.Cl. 881 (1965); Charles Leich & Co. v. United States, 329 F.2d 649, 165 Ct.Cl. 127 (1964). We are especially reluctant to consider such an argument without briefs or argument in view of the latter aspect.

6. In relying on Central Fibre Products Co. v. United States, 115 F.Supp. 147 (N.D. Ill.1953), perhaps plaintiff implicitly argues that section 3771, the overpayment interest provision, should be "read into and interrelated with the deficiency interest provisions of" section 292. That was the way the District Court characterized the identical issue there. 115 F. Sup., at 148.

7. In Manning v. Seeley Tube & Box Co., supra, the 1941 taxes were completely abated by a 1943 tax loss carry-back. Sections 122 (income tax); 710, 728, 729 (excess profits tax). In United States v. Koppers Co., supra, excess profits taxes for 1940 through 1955 were abated by section 722 relief. See also Northern Natural Gas Co. v. United States, supra at n. 5.

F.Supp. 670 (N.D.Ohio 1959); Babcock & Wilcox Co. v. Pedrick, 98 F.Supp. 548 (S.D.N.Y.1951), rev'd in part (on the interest determination), 212 F.2d 645 (2d Cir. 1954), cert. denied, 348 U.S. 936, 75 S.Ct. 355, 99 L.Ed. 733 (1955). While we would agree with plaintiff that these two cases may be distinguished from *Central Fibre Products,* we do not find the distinctions meaningful. It is true that the court in *Standard Oil* inferred from the special nature of the "quickie refund" procedure that Congress might have intended interest to be different on deficiencies from that on overpayments resulting from "quickie refunds." 175 F.Supp., at 672. And, in the present case, plaintiff's "quickie refund" survived the audit, almost in its entirety.[8] However, we do not feel that the result there turned on the fact that the plaintiff's "quickie refund" had to be returned after audit. This fact was mentioned only as a possible justification of the result dictated by statute. The *Babcock & Wilcox* case may be distinguished as involving two different taxes and not two computations of the same tax. In fact, in an apparent effort not to conflict with the District Court in *Central Fibre Products,* the Second Circuit mentioned in a footnote that this was a distinction. N. 4, 212 F.2d, at 650. We do not find this distinction helpful, again because nothing turns on it. The sense of both *Standard Oil* and *Babcock & Wilcox* was that the statute controls, and it does not permit the kind of contention plaintiff makes here.

It is for the above reason that we find plaintiff's second argument more persuasive; it looks to the precise words of the statute. Again proceeding from its use-of-funds theory, plaintiff asserts that we must look to the meaning of the word "interest" in section 292. The statute authorizes the government to collect "interest" and nothing else on the deficiency, so inquiry must be made to determine whether the plaintiff, or the government, should have had the use of the funds on which the six percent charge has been made. Plaintiff points out that it elected to pay its 1944 tax in installments as was its right under section 56(b), and that by paying its installments in timely fashion it gave the government the use of the funds on the dates prescribed by Congress. We think plaintiff's case might be strengthened by a refinement. By virtue of the Internal Revenue Service's action of charging plaintiff interest on the full $6,764,669.67 deficiency from March 15, 1945, it seems to us that the government has constructively been given the use of plaintiff's $4,565,505.90 "quickie refund" from the first installment date; it is as though plaintiff in fact paid its correct tax *plus* the amount of the "quickie refund" on March 15, 1945. In other words, the government has received something to which it would not have been entitled had plaintiff paid the correct tax on the installment method. However, we do not see in this apparent conflict between sections 56 and 292, the installment payment and interest provisions, any compulsion to look behind the word "interest" as it is used in section 292. Plaintiff concedes that the government is entitled to interest from March 15 to December 15, 1945 on the $2,199,163.77 difference between the correct tax and the amount reported, which is tantamount to conceding that section 292 overrides the installment payment election provision for one purpose. We think that it also overrides section 56 as to the amount of the "quickie refund." In so holding, we do not think we are doing anything at variance with plaintiff's use-of-money cases. E. g., Manning v. Seeley Tube & Box Co., supra; United States v. Koppers Co., supra. Those cases involved "potential deficiencies" subsequently abated by relief provisions; the question was whether there was a deficiency upon which interest would run and the Court held that for interest purposes the deficiency existed until abated. Here the inquiry is different,

8. See n. 3, supra.

for the statutory definition of "deficiency" clearly comprehends the $6,764,669.-67. We do not find room in section 292 for an interpretation that would give "interest" a special meaning as applied to a certain period.

In so holding, we realize the criticism can be made that the amount of interest depends on the order of rebate and deficiency. Where rebate precedes deficiency, the taxpayer gets no interest for the period from the first to the last installment, but where rebate succeeds deficiency, the taxpayer can set the rebate off against the deficiency, thereby achieving mutuality of interest. In theory at least, the Commissioner could exact additional interest by giving a refund one day and assessing a deficiency the next. That is not the case here, however, nor is it likely ever to be the case. Plaintiff's dilemma stems from its use of the "quickie refund" provision, which can give the effect of an overpayment and a deficiency for the same tax. That is exceptional as the provision by its own terms makes clear.[9] In the usual situation, the Commissioner will determine a net deficiency or overpayment after audit, thereby precluding both an overpayment and deficiency for the same tax. Even where the Commissioner audits two different tax computations or the same tax for two different years, the practice is to credit overpayment items against refund items before making refunds. See e. g., Jewel Shop, Inc. v. United States, 352 F.2d 526, 173 Ct.Cl. 466, (1965). We have no reason to believe that the Commissioner will henceforth alter standard procedure and make refunds preliminary to deficiency assessments simply to exact additional interest. The *Jewel Shop* case illustrates another point which is that plaintiff's injury results from an inadequacy built into the statute. Here, as there, the remedy must come from Congress.

The petition is dismissed.

---

9. Section 124(j) provides only for application for a *tenative adjustment*. The last sentence states: "An application un-

der this subsection shall not constitute a claim for credit or refund."