**NATIONAL STEEL CORPORATION**

v.

The **UNITED STATES.**

No. 344–67.

United States Court of Claims.

April 11, 1969.

William T. Hannan, Washington, D. C., attorney of record, for plaintiff. Hannan, Castiello & Berlow and John E. Laughlin, Jr., Pittsburgh, Pa., of counsel.

Norman J. Hoffman, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

SKELTON, Judge.

This action was brought to recover $130,592.02 in interest on excess profits tax overpayments which were caused by a determination favorable to taxpayer under Section 722 of the Internal Revenue Code of 1939, as amended (26 U.S.C. § 722 (1952), 56 Stat. 914).[1]

---

1. Sec. 722. General Relief—Constructive Average Base Period Net Income.

(a) General Rule.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in the cases described in the last sentence of section 722(b)· (4) and in section 722(c), regard shall be had to the change in the character of the business under section 722(b) (4) or the nature of the taxpayer and the character of its business under section 722(c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

National Steel Corporation reported and paid income and excess profits taxes for 1942, 1943, and 1945, as follows:

| Year | Income Tax | Excess Profits Tax |
|---|---|---|
| 1942 | $4,308,465.80 | $3,011,176.11 |
| 1943 | 4,245,304.33 | 7,328,502.27 |
| 1945 | 4,284,426.54 | 1,382,120.15 |

In 1951, the Internal Revenue Service, after examining the taxpayer's return for the years 1940 through 1945, notified plaintiff of a deficiency concerning its income tax and excess profits tax liabilities. These deficiencies were the result of necessary adjustments made in standard tax issues (such as credits, deductions for both income and excess profits taxes, computations used in determining income). The deficiencies were unrelated to later adjustments based upon section 722 relief. In August 1951, plaintiff filed suit in the Tax Court for a redetermination of these deficiencies and paid $3,000,000 in escrow to the Internal Revenue in March 1952. This sum was to be applied to any deficiencies which the petitioner might owe as a result of the Tax Court proceeding. In November 1959, the Tax Court entered a decision that the following deficiencies in excess profits taxes were due for the years in question:

| Year | Excess Profits Tax Deficiency |
|---|---|
| 1942 | $1,575,063.62 |
| 1943 | *893,135.65 |
| 1945 | 377,753.57 |

* Prior to post-war credit adjustment.

Income tax liability was determined on the basis of income not subject to excess profits taxes. Thus, the increase in excess profits tax liability meant that, for the purpose of determining income taxes, the taxpayer was entitled to a larger deduction for excess profits taxes. After making this deduction, the taxpayer had overpaid income taxes for the years in suit to this extent:

| Year | Income Tax Overpayment |
|---|---|
| 1942 | $656,894.92 |
| 1943 | 398,124.93 |
| 1945 | 280,948.37 |

The excess profits tax deficiencies were satisfied in part by the offsetting overpayments of income tax, but there remained a balance due on the excess profits tax deficiencies. Plaintiff was charged with interest on these net deficiencies from the due dates of filing each return until the date of the escrow payment in March 1952. However, the three million dollar escrow payment was insufficient to pay the net amount of deficiencies plus interest. Consequently, on January 18, 1960, the petitioner made additional payments in full satisfaction of these deficiencies as follows:

| Year | Additional Payment in 1960 |
|---|---|
| 1942 | $508,469.30 |
| 1943 | 203,719.47 |
| 1945 | 34,700.02 |

Thus, not until January 18, 1960, did the taxpayer make complete payment of its correct excess profits tax liability, as determined by the Tax Court's resolution of the dispute over standard tax issues.

For taxpayers who are subject to unjust and discriminatory excess profits taxes, Section 722 of the Internal Revenue Code of 1939 provides relief by substituting a constructive average base period net income in lieu of the normally computed average base period net income, as stated in footnote 1, *supra*. In February 1946, plaintiff filed applications requesting section 722 relief for 1942 and 1943. In August 1946, a similar application was filed requesting relief for 1945. These applications were rejected by the section 722 Field Committee, and this rejection was upheld by the Excess Profits Tax Council. Thereafter, on July 14, 1953, petitioner filed suit in the Tax Court seeking a redetermination of its excess profits tax liability under

section 722. On November 30, 1964, the Tax Court entered a stipulated decision granting section 722 relief and reciting that taxpayer had overpaid its excess profits taxes in the amounts shown below. These overpayments meant that taxpayer had taken too large an excess profits tax deduction in computing taxable income. Hence, the decrease in the allowable excess profits tax deduction gave rise to income tax deficiencies for the same years. The excess profits tax overpayments and the resultant income tax deficiencies for the years in suit are as follows:

| Year | Excess Profits Tax Overpayments Attributable to Section 722 Relief | Income Tax Deficiencies Attributable to Section 722 Relief |
|---|---|---|
| 1942 | $231,538.83 | $114,340.16 |
| 1943 | *115,769.42 | 57,170.08 |
| 1945 | 122,201.04 | 57,170.08 |

* As adjusted for post-war credit.

After certain adjustments relating to a year not involved in this suit, petitioner netted $300,000 as relief under section 722. This figure, however, did not include interest owed taxpayer on the excess profits tax overpayments, and it did not include interest due the defendant for the income tax deficiencies.

On January 15, 1965, the taxpayer was refunded the amount of overpayment of excess profits tax plus interest thereon, less the deficiencies in income tax plus interest. These interest figures are as follows:

| Year | Interest due Taxpayer on Overpayment of Excess Profits Tax | Interest due Government on Deficiencies of Income Tax |
|---|---|---|
| 1942 | $126,622.20 | *$88,745.19 |
| 1943 | 63,311.09 | *44,372.67 |
| 1945 | 101,607.54 | 31,978.87 |

* As supplemented by a payment in June 1965 to correct an arithmetic error.

Both parties agree that the computation of interest on the income tax deficiencies is correct; however, they disagree about the accuracy of interest computations concerning the overpayments of excess profits tax. The instant litigation was provoked by the dispute over the correct method of calculating interest on these overpayments. Resolution of this narrow issue constitutes the sole task confronting the court.

■ It has long been settled law that interest is not allowed prior to the date of overpayment, but is allowed only after the actual date of overpayment. Blair v. United States ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983 (1926); Matson Navigation Co. v. United States, 130 F.Supp. 357, 358, 131 Ct. Cl. 199, 201 (1955). In the Matson case, the court reiterated the Blair case holding that:

* * * [W]here taxes are paid in installments, there is no overpayment of taxes until the date that the total amount of the installments paid first exceeds the total amount of tax due. Therefore, interest is allowed from the date of the payment of that installment which first exceeded the correct amount of tax due. * * *. [Emphasis supplied.] Id. 130 F.Supp. at 358, at 201.

Thus, the date on which the plaintiff actually overpaid its excess profits taxes is an extremely critical question in computing interest due. In the instant case, because of the large deficiencies attributable to the adjustments in the standard tax issues (it will be recalled that plaintiff was notified of a deficiency regarding these standard issues in 1951 and that the deficiencies were not fully paid until 1960), petitioner did not actually overpay its excess profits taxes for 1942 and 1943 until January 18, 1960. Even the total of the payments on the original returns plus the escrow payment failed to exceed the deficiencies finally determined in the 1959 Tax Court proceedings. Not until 1960, when taxpayer paid the balance of the deficiency on standard items, did the total of excess profits tax payments exceed the amount

of section 722 relief granted for 1942 and 1943. The section 722 relief attributable to 1945, however, exceeded the sum of that part of the escrow payment and of the January 18, 1960, payment allocated to 1945. Thus, taxpayer overpaid its excess profits taxes for 1945 on three different occasions: (1) when the original return was filed; (2) when the escrow payment was made in 1952; and (3) when the final payment was made in January 1960.

■ The Government, of course, owed petitioner interest because of these overpayments. For 1942 and 1943, interest was calculated from the actual date of overpayment in 1960 until the date of final settlement in 1965. For 1945 it will be recalled that taxpayer first overpaid its excess profits taxes on the original return; however, because of a special provision in the 1939 Code,[2] interest was payable from no earlier than August 19, 1947. Taxpayer added to the original overpayment of its 1945 excess profits tax liability by the escrow payment in 1952 and the final deficiency payment in 1960. Accordingly, interest for 1945 was computed and paid to taxpayer from 1947, 1952, and 1960, respectively.

Because of the overpayments for the years in suit, some of the interest previously assessed against plaintiff for the deficiencies attributable to the standard-issues litigation had to be refunded. The standard-issues deficiency was not actually as large as the 1959 determination indicated. The section 722 relief had reduced this deficiency, and taxpayer thus owed less interest than he would have owed absent the section 722

relief. The Internal Revenue Service thus refunded to taxpayer interest previously assessed to the extent of section 722 relief granted. These refunds were as follows:

| Year | Refund of Previously Assessed Interest |
|------|----------------------------------------|
| 1942 | $70,413.18 |
| 1943 | 35,206.59 |
| 1945 | 26,407.93 |

■ After section 722 relief is granted, interest computations must be based on corrected tax liabilities. Winn-Dixie Stores, Inc. v. United States, 156 F. Supp. 730, 733, 140 Ct.Cl. 481, 484 (1957). Thus, plaintiff owed interest only on the corrected amount of the deficiency. Accordingly, the overpayments of interest were refunded by the Government.

■ Taxpayer apparently argues that this refund was a "payment" of interest to plaintiff for the 1947–1952 period. By making this "payment," it contends that the Government acknowledged that interest on the overpayments created by section 722 relief would begin to run in 1947. The obvious fallacy in this argument is the assumption that defendant "paid" interest to the taxpayer, whereas, the defendant only refunded interest previously assessed on a deficiency subsequently reduced. The taxpayer had paid too much interest, and the interest computations had to be corrected to reflect the reduced excess profits tax liability in accordance with *Winn-Dixie Stores, Inc., supra.* Rather than making an actual payment of the refund, an

2. Section 3771 of the Internal Revenue Code of 1939, as amended (26 U.S.C. § 3771 (1952)) is as follows:

§ 3771. Interest on overpayments * * * (g) Claims based upon relief under section 722.

* * * If any part of an overpayment for a taxable year beginning after December 31, 1941, is determined by the Commissioner to be attributable to the final determination of an application for

relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period prior to one year after the filing of such application or September 16, 1945, whichever is the later. * * *.

In the instant case August 19, 1947, was one year from the date on which petitioner filed its application for section 722 relief for the year 1945.

adjustment was made by adding the amounts of the refunds to the section 722 overpayment for the respective years as follows:

| | 1942 | 1943 | 1945 |
|---|---|---|---|
| Overpayment from Section 722 relief granted | $231,538.83 | *$128,632.68 | $122,201.04 |
| Refund of Previously assessed deficiency interest | 70,413.18 | 35,206.59 | 26,407.93 |
| Total Overpayment | $301,952.01 | *$163,839.27 | $148,608.97 |

\* Prior to the post-war credit subtraction of $12,863.26.

By comparing the above table with the one which follows, it can be seen that taxpayer did not overpay its excess profits tax liability for 1942 and 1943 until 1960, but that it overpaid its 1945 liability on three different occasions.

| Payments by taxpayer which produced the actual overpayments | 1942 | 1943 | 1945 |
|---|---|---|---|
| Portion of payment of tax shown due on original return | | | $ 17,103.75 |
| Escrow payment, March 7, 1952 | | | 96,805.20 |
| Final payment, January 18, 1960 | $508,469.30 | $203,719.47 | 34,700.02 |
| Total | $508,469.30 | $203,719.47 | $148,608.97 |

A careful sifting of the facts in this case establishes that the Government has paid the taxpayer interest on the overpayments from the dates on which the taxpayer actually overpaid its excess profits taxes. Plaintiff is entitled to no more. Taxpayer's belief that section 3771(g) establishes an absolute starting date for the running of interest is clearly erroneous in light of the bare terms of the statute as well as the legislative history leading to its enactment. Section 3771(g), quoted earlier in footnote 2, is worth repeating:

* * * If any part of an overpayment for a taxable year beginning after December 31, 1941, is determined by the Commissioner to be attributable to the final determination of an application for relief or benefit under section 722 for any taxable year, no interest shall be allowed or paid with respect to such part of the overpayment for any period prior to one year after the filing of such application, or September 16, 1945, whichever is the later. * * *.

An important part of this statute is, " * * * no interest shall be allowed * * * *prior to* * * *." [Emphasis supplied.] Thus, the law only *prohibits* interest from accruing prior to a certain date. It does not command that interest shall begin to accrue on that date. The prohibition of interest accumulation prior to a specified date carries no impli-

cation that interest *must* accrue after that date. The only inference which can be drawn is that interest *may* begin to run from that date. Whether a taxpayer is entitled to recover interest after this cut-off point is a separate, independent matter which is wholly unrelated to the statutory prohibition.

The legislative history of section 3771 (g)[3] supports this interpretation. Because the time-consuming complexities of obtaining section 722 relief had created a backlog of applications therefor, Congress enacted a moratorium during which interest otherwise allowable would not be paid.[4] During this moratorium, a taxpayer could not receive interest for overpayments attributable to section 722 relief. By thus deferring the earliest date from which interest could accrue, Congress did not intend to fix an absolute starting date for the running of interest. It only meant to establish a point prior to which interest would not accumulate. After this date, legislation was unnecessary, since the standard rule on overpayments controlled the question of interest. That is, if a taxpayer had overpaid his excess profits taxes, he received interest. But the instant taxpayer did not overpay its excess profits taxes for 1942 and 1943 when it filed its returns; in fact, it underpaid them. Because of the deficiencies in the excess profits tax liabilities attributable to standard tax issues, petitioner made no actual overpayment of its excess profits taxes for 1942 and 1943 until 1960. Of course, the 1945 liability was overpaid on three different occasions. The taxpayer received interest from the respective dates of overpayment until the date of final settlement, January 15, 1965. Any additional recovery would be unjustifiable in light of the *Matson Navigation Co.* and *Blair* cases, *supra*.

■ The confusion in this case results from the failure of taxpayer to report correctly on its 1942 and 1943 tax returns the items known as "standard issues." Because of corrections necessitated by the inaccurate standard-issues figures, plaintiff underpaid its tax liability for 1942 and 1943 by a substantial sum. Had plaintiff paid its tax liability for such years using the correct standard-issues computations, then this case would not have arisen. The effect of section 722 relief would have been to transform the formerly accurate payments into overpayments, and plaintiff would have been entitled to collect interest from the deferred date of overpayment, 1947, until the date of final settlement. But this hypothetical situation does not exist because of the deficiency attributable to taxpayer's inaccurate reporting of standard-issues on the 1942 and 1943 tax returns. This deficiency comprises a far larger sum than the amount of relief obtained under section 722. Even when each year's share of the escrow payment is added to the amount of section 722 relief, the total is less than the standard-issues deficiency. Not until the January 1960, payment is added to the section 722 relief and to the escrow payment is the standard-issues deficiency exceeded for the years 1942 and 1943. Therefore at all times prior to 1960, the taxpayer owed money to the Government with respect to such years. To grant the relief plaintiff requests would be to allow interest for an overpayment, when, in fact, the taxpayer had underpaid its total tax liability. Such an illogical result was not contemplated by Congress, and it cannot be supported by the language of section 3771(g).

■ The petitioner asserts as an "undisputed principle" the fact that, "section 722 relief is separate and apart from computations of tax based upon standard issues, whether those standard issues arise from a consideration of ordinary income tax or of excess profits

---

3. H.R.Rep.No. 722, 78th Cong., 1st Sess. (1943); S.Rep.No. 508, 78th Cong., 1st Sess. (1943).

4. Section 292(b) provides a similar suspension of time for charging interest against the taxpayer for deficiencies attributable to section 722 relief.

tax liability." Thus, taxpayer argues, the excess profits tax payments for 1942 and 1943 were underpayments in relation to the deficiency on standard issues, but were overpayments in relation to the section 722 relief.

This notion ignores the reality of the situation and would result in an artificial interest payment to the taxpayer for an overpayment never actually made. There is absolutely no reason to view a taxpayer's tax liability from the standpoint of separate items in the return. Tax liability is computed on net taxable income. For the years 1942 and 1943, taxpayer owed an overall deficiency, even considering section 722 relief, until 1960, at which time it first overpaid its excess profits taxes. For those years, plaintiff has been paid the correct amount of interest, beginning in 1960 and continuing until final settlement in 1965.

 The taxpayer's final contention is that it is entitled to interest from 1947 to 1960 because the Government charged deficiency interest during the same period. There is no inconsistency here. For 1942 and 1943, the taxpayer suffered an income tax deficiency as a result of the section 722 relief. Interest on a deficiency runs from the date on which the tax was due,[5] whereas interest on an overpayment does not begin to accrue until the date of overpayment. Since taxpayer underpaid its income taxes for 1942 and 1943, the Government correctly charged interest from the deferred date of 1947. Because plaintiff did not overpay its taxes for 1942 and 1943 until 1960, it did not qualify for interest prior to that date with respect to such years.

For the foregoing reasons, we conclude that plaintiff is not entitled to recover. Accordingly, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

---

5. In the instant case, however, interest was not charged prior to 1947, because of section 292 (b), *supra*, footnote 4.